[No. C030134. Third Dist. Apr. 13, 2000.]

ARDEN CARMICHAEL, INC., et al., Plaintiffs and Appellants, v. COUNTY OF SACRAMENTO, Defendant and Respondent.

## COUNSEL

Hoseit & Koelewyn, H. L. Koelewyn; Ishikawa Law Office and Brendon Ishikawa for Plaintiffs and Appellants.

Robert A. Ryan, Jr., County Counsel, and Elaine P. DiPietro, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**NICHOLSON, J.**—This case presents two principal issues: (1) Did a fee imposed by the County of Sacramento (the County) upon a nonprofit organization based on a percentage of the gross receipts of bingo games violate California's Constitution? (2) Does Penal Code section 326.5 prohibit a nonprofit organization from using bingo proceeds to pay attorney fees associated with the bingo operation? We conclude that the fee was unlawful, and that the statute does not prohibit payment of attorney fees from bingo proceeds.

Article XIII, section 26, subdivision (d) of the California Constitution states: "A nonprofit organization . . . is exempt from any business license

tax or fee measured by income or gross receipts that is levied by a county . . . ." Despite this clear constitutional provision, the County, relying on former subdivision (*l*)(2) of Penal Code section 326.5, a statute which has now been amended, required nonprofit organizations to pay a fee of 1 percent of monthly gross bingo receipts over $5,000. That fee, however, violated article XIII, section 26, subdivision (d) and was, therefore, invalid.

Subdivision (b) of Penal Code section 326.5 prohibits payment to any person of a "profit, wage, or salary from any bingo game . . . ." Since compensation paid to an attorney for representation is not a "profit, wage, or salary," subdivision (b) does not prohibit use of bingo proceeds to pay attorney fees.

## Background

Plaintiffs are nonprofit organizations that run licensed bingo games in the County.

As amended in 1979 and 1981 and effective at all times relevant to this appeal, Penal Code section 326.5, former subdivision (*l*)(2), allowed a county to impose a $50 license fee on nonprofit organizations running bingo games. In addition, the county was authorized to collect a fee of "one percent of the monthly gross receipts over five thousand dollars ($5,000) derived from bingo games."[1] (Stats. 1979, ch. 1006, § 1, pp. 3419-3420.)

In June 1994, the people of California adopted Proposition 176, which amended California Constitution, article XIII, section 26, by adding subdivision (d), which states: "A nonprofit organization that is exempted from

---

[1] At all times relevant to this opinion, Penal Code section 326.5, former subdivision (*l*)(2) stated, in pertinent part: "In lieu of the license fee permitted under paragraph (1), a city, county, or city and county may impose a license fee of fifty dollars ($50) paid upon application. . . . An additional fee of 1 percent of the monthly gross receipts over five thousand dollars ($5,000) derived from bingo games shall be collected monthly by the city, county, or city and county issuing the license."

Former Sacramento County Ordinance No. 4.26.050 tracked the language of the statute, imposing "a fee of one percent (1%) of the monthly gross receipts over five thousand dollars ($5,000) derived by the licensee from the conduct of bingo games."

Effective January 1, 1997, Penal Code section 326.5, subdivision (*l*)(2) was amended by substituting the following language in place of the provision for a fee based on the gross receipts: "An additional fee for law enforcement and public safety costs incurred by the city, county, or city and county that are directly related to bingo activities may be imposed and shall be collected monthly by the city, county, or city and county issuing the license; however, the fee shall not exceed the actual costs incurred in providing the service." (Stats. 1996, ch. 283, § 1.) The taxes at issue in this case were collected under section 326.5, former subdivision (*l*)(2), based on the gross receipts over $5,000.

References in this opinion to Penal Code section 326.5 are to the version that existed before the 1996 amendment. We express no opinion concerning the application of the amended statute.

taxation by Chapter 4 (commencing with Section 23701) of Part 11 of Division 2 of the Revenue and Taxation Code or Subchapter F (commencing with Section 501) of Chapter 1 of Subtitle A of the Internal Revenue Code of 1986, or the successor of either, is exempt from any business license tax or fee measured by income or gross receipts that is levied by a county or city, whether charter or general law, a city and county, a school district, a special district, or any other local agency."[2]

From June 1994 through December 1996, the County collected a fee from nonprofit organizations, including plaintiffs, based on Penal Code section 326.5, former subdivision (*l*)(2). In all, plaintiffs paid $905,134.37 in section 326.5, former subdivision (*l*)(2) fees during that time period.[3]

Plaintiffs retained an attorney and filed a complaint for refund of the fee and for a declaration that they could use bingo proceeds to pay attorney fees. The County moved for summary judgment, and plaintiffs agreed there were no material facts in dispute. Accordingly, both parties sought entry of judgment in their favor based on the undisputed facts. The court found in favor of the County on both issues—that is, whether the County could base a fee on the gross bingo receipts and whether plaintiffs could pay attorney fees from the bingo proceeds. Judgment was entered in favor of the County, and plaintiffs appeal.

DISCUSSION

I

*The Meaning of the Constitutional Provision*

 As noted above, the County contends article XIII, section 26, subdivision (d) of the California Constitution does not necessarily mean what it says. The County, conceding that it was collecting a business license tax or fee, asserts it had the power to tax nonprofit organizations a percentage of the proceeds of the bingo games. This view is untenable, given the constitutional provision.

---

[2]For examples of legislation implementing California Constitution, article XIII, section 26, subdivision (d), see Business and Professions Code sections 16000, 16100; Government Code section 37101; Revenue and Taxation Code section 7284.1.

[3]Plaintiffs' claim for refund of fees is limited to fees paid on or after July 14, 1996, because the claim was untimely as to fees before that date.

In several respects, the County's brief responds to issues not raised on appeal by plaintiffs. For example, the County devotes four pages to the issue of whether plaintiffs' claim was untimely as to fees paid before July 14, 1996. Plaintiffs, however, concede the issue without argument. In large part, the County's brief is a reproduction of its memorandum of points and authorities in the trial court, not a response to plaintiffs' brief on appeal.

On its face, article XIII, section 26, subdivision (d) of the California Constitution exempts the plaintiffs from any business license tax or fee measured by income or gross receipts that is levied by the County. The provision does not limit the exemption to certain business activities; accordingly, it extends to all business activities, including bingo. The County disputes this conclusion by asserting the term "business license tax or fee" does not include a fee for bingo because bingo is not "a usual and legitimate business." This argument fails because, the debate over the morality of gambling aside, bingo is permitted, in certain circumstances, by the Constitution, the Penal Code, and local ordinances. (See Cal. Const. art. IV, § 19, subd. (c); Pen. Code, § 326.5; Sac. County Ord. No. 4.26.000.) Furthermore, article XIII, section 26, subdivision (d) contains no requirement that the business activity be "usual and legitimate." The County ineffectively seeks to impose those terms arbitrarily on the statute.

Even though the plain meaning of the constitutional provision prohibits a fee on the bingo activities based on the gross receipts, the County attempts to circumvent that meaning by applying the principles of constitutional construction. That approach is contrary to the established standards for interpreting the constitution and, indeed, unreasonable if we are to have any faith in and respect for the express will of the people.

■ "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] In the case of a constitutional provision adopted by the voters, their intent governs. [Citations.] To determine intent, ' "The court turns first to the words themselves for the answer." ' [Citations.] 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).' [Citation.]" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].)

■ The County asserts that, despite the unambiguous plain meaning of the statute, there is a latent ambiguity. ■ If a constitutional provision is shown to contain a latent ambiguity, we must apply the tools of construction to resolve the ambiguity. Here, however, there is no latent ambiguity.

" '[A] latent ambiguity is said to exist where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic evidence creates a necessity for interpretation or a choice among two or more possible meanings.' . . ." (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 495, fn. 18 [159 Cal.Rptr. 494, 601 P.2d 1030], italics and citation omitted.) In applying this concept of latent ambiguity, however, we must

temper our analysis with the ever-present understanding that the will of the people as expressed in the plain meaning of the constitutional provision is paramount. Our duty is not to twist words to substitute our own judgment for that of the voters; it is to determine and apply the intent of the people (in the case of a constitutional provision adopted by initiative). With extremely rare exceptions as noted in Supreme Court precedent (see *id.* at p. 495), that intent will be found in the plain meaning of the constitutional provision.

 Here, the indications of a latent ambiguity are far too insubstantial to justify deviation from the plain meaning of the constitutional provision.

The Legislative Analyst's analysis of Proposition 176 which appeared in the ballot pamphlet stated: "[W]e are not aware of any cities or counties which have imposed business license taxes on nonprofit organizations. As a result, this measure would have little, if any, effect on local government revenues, at least in the near term. [¶] The measure would, however, prevent local governments from applying these taxes on such organizations in the future." (Ballot Pamp., Primary Elec. (June 7, 1994) p. 11.)

The County asserts this statement in the ballot pamphlet reflected an understanding that California Constitution, article XIII, section 26, subdivision (d) would not apply to bingo license fees pursuant to Penal Code section 326.5 because counties were already imposing the fee based on gross receipts at the time Proposition 176 was passed. We disagree. The statement by the Legislative Analyst reflects no such understanding. Instead, it is apparent the Legislative Analyst was simply unaware of Penal Code section 326.5 and that counties were collecting the fees. While we may presume the voters understood the state of the law at the time they voted on Proposition 176 (see *Bailey v. Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394]), there is no corresponding presumption that the Legislative Analyst understood the state of the law or practice.

The County also relies on statements for and against Proposition 176 in the ballot pamphlet, claiming again that it was understood California Constitution, article XIII, section 26, subdivision (d) would not apply to bingo license fees. For example, the proponents argued: "Since no city is currently using such a tax, passage of this measure will NOT result in cuts in local services." (Ballot Pamp., Primary Elec., *supra*, argument in favor of Prop. 176, p. 12.) This language does not convince us to do violence to the plain meaning of the constitutional provision. The language is expressly limited to the practice of cities, rather than counties, imposing fees. In any event, it may have been based on the incorrect information provided by the Legislative Analyst.

Finally, the County argues article XIII, section 26, subdivision (d) of the California Constitution was not intended to apply to Penal Code section 326.5 because, although the Legislature added and amended various statutes to comply with the constitutional provisions (see fn. 3, *ante*), it did not amend or repeal section 326.5. Were we to accept the logic of this argument, we would be forced to conclude the Legislature can amend the Constitution. That, of course, is not the case. (See *People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) "Wherever statutes conflict with constitutional provisions, the latter must prevail." (*People v. Navarro* (1972) 7 Cal.3d 248, 260 [102 Cal.Rptr. 137, 497 P.2d 481].)

The plain meaning of California Constitution article XIII, section 26, subdivision (d) prevails. Therefore, the fee imposed on plaintiffs based on the gross receipts of the bingo games was unconstitutional.

## II

### *Payment of Attorney Fees from Bingo Proceeds*

Article IV, section 19, subdivision (c) of the California Constitution authorizes the Legislature to permit the cities and counties to allow bingo, "but only for charitable purposes." "It is a misdemeanor for any person to receive or pay a profit, wage, or salary from any bingo game authorized by Section 19 of Article IV of the State Constitution. Security personnel employed by the organization conducting the bingo game may be paid from the revenues of bingo games . . . ." (Pen. Code, § 326.5, subd. (b).)

The County has interpreted these provisions to mean that attorney fees cannot be paid out of the bingo proceeds. That interpretation is not supported by the language of the statute.[4]

A criminal statute "will be construed as favorably to the defendant as its language and intent will reasonably permit." (*People v. Horn* (1998) 68 Cal.App.4th 408, 419 [80 Cal.Rptr.2d 310].) On its face, Penal Code section

---

[4] Although their complaint seeks a declaration that Penal Code section 326.5 does not preclude use of bingo proceeds to pay attorney fees and they argued it as a matter of statutory interpretation, as well as constitutional rights, during the summary judgment proceedings, plaintiffs seek a declaration from this court only that a prohibition on payment of attorney fees from bingo proceeds violates their constitutional rights. We do not reach the constitutional issue because the matter can be resolved by statutory interpretation. (See *Wolston v. Reader's Digest Assn., Inc.* (1979) 443 U.S. 157, 160-161, fn. 2 [99 S.Ct. 2701, 2703, 61 L.Ed.2d 450] [courts should resolve dispositive statutory issues before reaching constitutional issues].) In any event, even though plaintiffs do not address the statutory interpretation issue on appeal, the County does, and plaintiffs had the opportunity to respond in their reply brief.

326.5, subdivision (b), does not appear to prohibit payment of attorney fees for services related to the bingo operations out of bingo proceeds. A "profit" commonly refers to what a partner or stakeholder receives from the enterprise, while a "wage" or "salary" refers to employee compensation. When one pays a fee to an attorney, that fee is not a "profit, wage, or salary" under a reasonable interpretation of those terms in the context of the statute. Certainly, if the Legislature had intended to include a prohibition on the payment of fees in the statute, it could have used the term "fees."

Expenses, such as attorney fees, are a cost of doing business and are deducted from the gross receipts to determine the organization's profit in the enterprise. There is no prohibition in Penal Code section 326.5, subdivision (b) on paying expenses, except for those that would be characterized as a "profit, wage, or salary."

The County attempts to establish that the Legislature meant to include a prohibition on payment of attorney fees from bingo proceeds. It claims the context of the entire statute shows the intent. We disagree. To the contrary, a review of Penal Code section 326.5 reveals the Legislature's intent to allow expenses such as attorney fees to be paid from bingo proceeds.

Subdivision (h) of Penal Code section 326.5 provides further guidance concerning bingo proceeds: "A bingo game shall be operated and staffed only by members of the authorized organization that organized it. Those members shall not receive a profit, wage, or salary from any bingo game." This provision does not prohibit payment of attorney fees from bingo proceeds. It expressly applies only to payment of bingo proceeds to compensate members of the authorized organization who operate and staff the bingo games.

The County contends that, because Penal Code section 326.5, subdivision (h) does not prohibit payment of attorney fees from bingo proceeds, subdivision (b) does prohibit such payments. Unbothered by the lack of language in subdivision (b) to support this argument, the County asserts the legislative intent of Penal Code section 326.5 is to preserve bingo proceeds for charitable purposes and, therefore, subdivision (b) must prohibit payment of attorney fees from bingo proceeds. While there can be no doubt that one of the purposes of Penal Code section 326.5 is to preserve bingo proceeds for charitable purposes, that recognition does not justify reading into the statute what is not there, especially in light of the fact that criminal penalties attach to its violation.

A Sacramento County ordinance echoing the prohibitions found in Penal Code section 326.5 supports our conclusion the statute does not prohibit

payment of attorney fees from bingo proceeds. That ordinance provides: "It is a misdemeanor under Section 326.5 subdivision (b) of the Penal Code of the State of California for any person to receive or pay a profit, wage, or salary from any bingo game authorized under this Chapter for activities related to bingo or the bingo operation. The expenditure of any revenues or proceeds derived from bingo to pay employees, members, or contractors of licensed organizations for services associated with the planning, organization, management, operation or staffing of bingo games, or related to bookkeeping, accounting, auditing or technical advice concerning the handling or disposition of such revenues or proceeds is prohibited. A violation of this prohibition is punishable by a fine not to exceed ten thousand dollars ($10,000), which fine shall be deposited in the general fund of the County of Sacramento." (Sac. County Ord. No. 4.26.175.)

Conspicuously missing in the county ordinance is a prohibition on use of bingo proceeds to pay attorney fees. An attorney representing the organization is not engaged in "planning, organization, management, operation or staffing of bingo games" and does not perform bookkeeping or accounting services. Whether the ordinance is the County's attempt to interpret Penal Code section 326.5 or an attempt to regulate bingo proceeds more restrictively, it does not preclude use of the proceeds to pay attorney fees.

We therefore hold that organizations are not precluded, either by statute or by the county ordinance, from paying attorney fees from bingo proceeds.[5] Hence, we need not consider plaintiffs' contention such a prohibition would violate plaintiffs' constitutional rights.

### III

*Private Attorney General Fees*

Plaintiffs assert we should award them attorney fees under the private attorney general statute. (See Code Civ. Proc., § 1021.5.) This issue was not raised in the trial court, most likely because plaintiffs did not prevail there. ■ Whether a party is entitled to an award of attorney fees under the private attorney general statute is an issue best decided in the first instance in the trial court. (*Draeger v. Reed* (1999) 69 Cal.App.4th 1511,

---

[5]We recognize that Penal Code section 326.5, subdivision (k) places some monetary restrictions on expenses paid by some organizations from bingo proceeds. This action, however, does not seek a judicial determination of whether that subdivision applies to plaintiffs and whether the fees they have paid or propose to pay to counsel are thereby restricted.

1525 [82 Cal.Rptr.2d 378].) Accordingly, we express no opinion on the subject. Plaintiffs may raise the issue in the trial court on remand.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court to enter judgment conforming to this opinion and to consider plaintiffs' request for attorney fees. Plaintiffs are awarded their costs on appeal.

Scotland, P. J., and Sims, J., concurred.