[No. C031367. Third Dist. Oct. 31, 2001.]

ARDEN CARMICHAEL, INC., et al., Plaintiffs and Appellants, v. COUNTY OF SACRAMENTO, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of subparts C, D, and E of part II.

## COUNSEL

Hoseit & Koelewyn, H. L. Koelewyn; Ishikawa Law Office and Brendon Ishikawa for Plaintiffs and Appellants.

Robert A. Ryan, Jr., County Counsel, and Elaine P. DiPietro, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**KOLKEY, J.**—In *Arden Carmichael, Inc. v. County of Sacramento,*[1] this court held that a fee imposed on nonprofit organizations by the County of Sacramento (the County) based upon a percentage of their gross receipts earned from bingo games violated article XIII, section 26, subdivision (d) of the state Constitution (hereinafter sometimes referred to as subdivision (d)). Subdivision (d) provides that a nonprofit organization "is exempt from any business license tax or fee measured by income or gross receipts that is levied by a county . . . ."

---

[1] *Arden Carmichael, Inc. v. County of Sacramento* (2000) 79 Cal.App.4th 1070 [94 Cal.Rptr.2d 673] (*Arden Carmichael*).

In an effort to conform with the law, the County changed its fee structure. It now imposes a fee based upon a percentage of the prize payouts from the bingo games.

Plaintiffs, a group of 34 nonprofit organizations that operate licensed bingo games within the County, brought this action challenging the County's new fee structure: They argue that "[p]rize payouts . . . track the gross income [of the bingo operations] closely enough to be considered inextricably linked" and that a fee based thereon is therefore violative of the state Constitution's prohibition against fees measured by income or gross receipts. Plaintiffs also argue that the new fee violates Penal Code section 326.5, subdivision (*l*)(2), which authorizes the imposition of a license fee in the amount of $50, plus an additional fee that may not exceed the actual costs of law enforcement and public safety directly related to the bingo activities.

The County moved for summary adjudication, and the trial court ruled that the County's new fee complied with the state Constitution and Penal Code section 326.5.

In the published portion of our opinion, we conclude that the County's fee does not violate the state Constitution because a fee measured by prize payouts—which is an expense of the bingo operations—cannot be deemed a fee based on income or gross receipts. Neither the plain language of the constitutional provision nor its purpose supports an extension of the prohibition to fees based on expenses. However, we reverse and remand because the County has failed to sustain its burden of persuasion that there is no triable issue of material fact whether the County is charging plaintiffs a fee that exceeds that permitted by Penal Code section 326.5, subdivision (*l*)(2).

## I. BACKGROUND

In June 1994, the voters adopted Proposition 176, which amended and limited the reach of article XIII, section 26 of the state Constitution—which authorizes, with some exceptions, the imposition of taxes measured by income—by adding another exception, subdivision (d). Subdivision (d), which exempts nonprofit organizations from any local business license tax or fee measured by income or gross receipts, states in relevant part: "A nonprofit organization that is exempted from taxation by Chapter 4 . . . of Part 11 of Division 2 of the Revenue and Taxation Code or Subchapter F . . . of Chapter 1 of Subtitle A of the Internal Revenue Code of 1986 . . . is exempt from any business license tax or fee measured by income or gross receipts that is levied by a county or city, whether charter or general law, a city and county, a school district, a special district, or any other local agency."

Notwithstanding the passage of Proposition 176, between June 1994 and December 1996, the County collected from nonprofit organizations $905,134.37 in fees based on one percent of each organization's gross receipts over $5,000 earned from bingo games, as authorized by a former version of Penal Code section 326.5 and a former County ordinance.[2] Given the clear and unambiguous language of subdivision (d), we concluded in *Arden Carmichael* that the County's imposition of a "fee . . . based on the gross receipts of the bingo games was unconstitutional."[3]

Effective January 1, 1997, Penal Code section 326.5 (hereinafter referred to as section 326.5) was amended to conform with the requirements of subdivision (d). Section 326.5, subdivision (*l*), now states in relevant part:

"(*l*)(1) A city, county, or city and county may impose a license fee on each organization that it authorizes to conduct bingo games. The fee, whether for the initial license or renewal, shall not exceed fifty dollars ($50) annually . . . .

"(2) In lieu of the license fee permitted under paragraph (1), a city, county, or city and county may impose a license fee of fifty dollars ($50) paid upon application. . . . An additional fee for law enforcement and public safety costs incurred by the city, county, or city and county that are directly related to bingo activities may be imposed and shall be collected monthly by the city, county, or city and county issuing the license; however, the fee shall not exceed the actual costs incurred in providing the service." (Stats. 1996, ch. 283, § 1.)

Also effective January 1, 1997, the County amended Sacramento County Code section 4.26.050 to conform with Penal Code section 326.5, modifying the basis for its bingo fee from one percent of gross receipts to a $50 fee plus an additional fee, to be prescribed by the County board of supervisors, to recover law enforcement and public safety costs in accordance with Penal Code section 326.5. That fee, as set by the board of supervisors, has varied from 1.225 percent of monthly prize payouts (less an exemption of $2,000 monthly) for the period of January-March 1997, to a fee of 1.2 percent for April-December 1997, to a fee of 1.15 percent effective January 1, 1998.

In deciding to base a fee on prize payouts, the County reasoned that not only was the amount of prize payouts steady, thereby offering "a consistent source of monies for the County to fully recover its costs," but that "prize

---

[2] *Arden Carmichael, supra,* 79 Cal.App.4th at pages 1073-1074.
[3] *Arden Carmichael, supra,* 79 Cal.App.4th at page 1077.

payouts generally correlate[d] to the amount of time involved by the County in regulating licensees": "Usually, with greater sums in prizes and payouts[,] a charity conducts more games thereby attracting a larger number of gamblers."

In direct response to the County's new fee structure, plaintiffs filed this suit seeking a refund of bingo fees collected by the County from January 1 to May 31, 1997. In their first cause of action, plaintiffs charged that because prize payouts are linked to gross receipts, the County's new fee structure violated the state Constitution. They also contended that the amount of fees did not reflect the actual law enforcement and public safety costs incurred by the County to oversee the operation of the bingo games. A third cause of action was later added making the same claims for an unspecified future time period. (Second and fourth causes of action sought declaratory relief over the right of members of one charitable organization to work in the bingo hall of another, but this is not at issue on appeal.)[4]

The County thereafter filed a motion for summary judgment, or in the alternative, for summary adjudication and judgment on the pleadings.

Following hearing and argument, the trial court granted the County's motion for summary adjudication. The court concluded that the fee complied with the state Constitution and section 326.5. The court also granted the County's motion for judgment on the pleadings with respect to the second and fourth causes of action for declaratory relief. The action was dismissed in its entirety. Plaintiffs appeal.

## II. DISCUSSION

### A. Standard of Review

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law."[5]

"[G]enerally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of

---

[4]We deny plaintiffs' motion to strike that portion of the County's brief that addresses those causes of action, however. California Rules of Court, rule 18 authorizes the court to order a brief stricken, or to disregard its defects, when it fails to comply with the California Rules of Court. But plaintiffs never specify in their motion which rule the County's brief violated by reason of its discussion of those causes of action.

[5]*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], footnote omitted.

any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact."[6] "[I]f the court concludes that the [opposing party's] evidence or inferences raise a triable issue of material fact, it must conclude its consideration and deny the . . . motion."[7]

## B. *The Constitutionality of the Fee*

■ Plaintiffs' claim that the County's fee violates the state Constitution presents only a legal question. It is undisputed that the County's fee is calculated on the basis of prize payouts, and the relevant question is whether this violates subdivision (d)'s prohibition against fees "measured by income or gross receipts."[8] This issue was thus properly subject to a summary judgment determination.

Plaintiffs argue that a fee measured by prize payouts is illegal because "[p]rize payouts . . . track the gross income closely enough to be considered inextricably linked." They observe that "prize payouts have historically amounted to about 77 percent of gross receipts," and thus claim that the County adjusted its fee from one percent of *gross receipts* under the former (and now unconstitutional) County ordinance to roughly 1.298 percent of *prize payouts* under the new County code section to achieve the same result.[9] Plaintiffs argue that the County cannot do indirectly what it is prohibited from doing directly.

Plaintiffs are correct that prize payouts do appear to be a roughly constant percentage of gross receipts, ranging from 77.7 percent of gross receipts in fiscal year 1992-1993, to 77.8 percent in fiscal year 1993-1994, to 77.1 percent in fiscal year 1994-1995.

But this analysis misses its target. The issue in this case is not whether the County is legally permitted to devise a new measure for its fee that recovers the same amount of revenue as before, but whether the particular measure developed by the County is constitutional. We have little doubt that as long as the County is legally entitled to recover all of its law enforcement and public safety costs—and it is—it will eventually find a constitutional formula to collect them. Thus, the question becomes whether the state Constitution prohibits a fee calculated as a percentage of prize payouts, simply

[6]*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at page 850.
[7]*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at page 856.
[8]California Constitution, article XIII, section 26, subdivision (d).
[9]Plaintiffs request that we take judicial notice of the simple mathematical calculation that supports this analysis. We grant the request. (Evid. Code, §§ 452, subd. (h), 459, subds. (a) & (c); see *People v. Bradley* (1982) 132 Cal.App.3d 737, 743, fn. 6 [183 Cal.Rptr. 434].)

because prize payouts can be shown to be a roughly constant percentage of gross receipts—a measure that the Constitution prohibits.

■ "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] In the case of a constitutional provision adopted by the voters, their intent governs. [Citations.] To determine intent, ' "The court turns first to the words themselves for the answer." ' [Citations.] 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).' [Citation.]"[10]

■ In this case, article XIII, section 26 generally permits "[t]axes on or measured by income,"[11] but makes specific exceptions, including that specified under subdivision (d). Subdivision (d) provides that "[a] nonprofit organization that is exempted from [federal or state income] taxation . . . is exempt from any business license tax or fee measured by income or gross receipts that is levied by a county or city, whether charter or general law, a city and county, a school district, a special district, or any other local agency."[12] Accordingly, the provision does not exempt nonprofit organizations from all business license taxes or fees, but only those measured by income or gross receipts.

Prize payouts are, however, not income but an expense to the nonprofit organization. They are ultimately deducted from the gross income realized by the nonprofit organization to determine the net income that it has derived from its bingo games. Does a fee based on an expense that is *deducted from* gross receipts constitute a prohibited fee *measured by* income or gross receipts under subdivision (d)? We think not.

■ First, we not only look to the words of a provision to ascertain its intent,[13] but acknowledge that the words "generally provide the most reliable indicator of [the lawmakers'] intent."[14] In this case, the plain language of subdivision (d) does not prohibit fees that are measured on the basis of expenses, although it certainly could have. "A constitutional amendment should be construed in accordance with the natural and ordinary meaning of

---

[10]*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].
[11]California Constitution, article XIII, section 26, subdivision (a).
[12]California Constitution, article XIII, section 26, subdivision (d).
[13]*Delaney v. Superior Court, supra,* 50 Cal.3d at page 798.
[14]*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].

its words."[15] Adherence to the natural and ordinary meaning of "income" and "gross receipts" in subdivision (d) supports the conclusion that the County's fee, measured instead by a type of expense, does not violate the constitutional provision. "The constitution is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions."[16] A court that *speculates* over what a provision might have said, rather than grounding its interpretation on what the provision has in fact said, oversteps its judicial role.

Our state high court's decision in *A.B.C. Distributing Co. v. City and County of San Francisco*[17] supports our conclusion that a fee based on an expense incurred by a taxpayer does not constitute a fee measured by income or gross receipts. There, the plaintiffs—wholesale liquor and beer distributors—contended that San Francisco's ordinance, which imposed a 1 percent payroll expense tax on persons hiring employees to perform services in San Francisco, violated, among other things, section 17041.5 of the Revenue and Taxation Code, which provides that no city may levy or collect any tax upon the income of any person. Although the payroll expense tax was measured by the wages paid to employees, the California Supreme Court rejected the challenge: "The short answer to plaintiffs' contention is that the payroll expense tax is not a tax on or measured by *their* income. Instead, the tax is imposed upon plaintiffs by reason of their employment of labor within the city and county, measured by the expense incurred by plaintiffs in conducting this aspect of their business. The fact that the tax is measured by wages paid to the employees would not convert the tax to an income tax."[18] Thus, the state Supreme Court distinguished a tax measured by an expense incurred by plaintiffs from one measured by their income. In response to plaintiffs' suggestion that a payroll expense tax was, in essence, an income tax because it was paid from plaintiffs' income—a suggestion similar to that of plaintiffs in this case—the state high court observed that "all taxes necessarily involve some reduction of and relationship to available revenues."[19]

Our construction is also supported by the canon of statutory construction, *expressio unius est exclusio alterius*. This maxim "expresses the learning of

---

[15] *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].

[16] *People v. Campbell* (1902) 138 Cal. 11, 15 [70 P. 918], quoted favorably in *Delaney v. Superior Court, supra,* 50 Cal.3d at page 799.

[17] *A.B.C. Distributing Co. v. City and County of San Francisco* (1975) 15 Cal.3d 566 [125 Cal.Rptr. 465, 542 P.2d 625].

[18] *A.B.C. Distributing Co. v. City and County of San Francisco, supra,* 15 Cal.3d at page 576, original italics.

[19] *A.B.C. Distributing Co. v. City and County of San Francisco, supra,* 15 Cal.3d at page 576.

common experience that when people say one thing they do not mean something else."[20] Here, subdivision (d)'s specific listing of prohibited measures for taxation—income or gross receipts—permits the others. ▮ "While every word of a statute must be presumed to have been used for a purpose, it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose."[21]

▮ Nor can a fee based on prize payouts be deemed a mere subterfuge to circumvent subdivision (d)'s prohibition on the use of income or gross receipts as a measure for fees. We suppose that plaintiffs could argue that subdivision (d)'s exemption should be construed to extend beyond income-based fees on the ground that it also includes a ban against fees based on gross receipts, thereby also prohibiting income-*like* measurements. However, to the extent that the reference to gross receipts is argued to create an ambiguity, " 'it is appropriate to consider indicia of the voters' intent' " in construing the provision[22]—which was an initiative measure, Proposition 176. This includes the analysis and arguments contained in the official ballot pamphlet.[23] The argument in favor of Proposition 176 in the ballot pamphlet stated that it would "protect community service groups from having their *contributions* taxed which were originally intended to aid many of the community health and human services such as those for children, the disabled, the poor or those displaced by natural disasters."[24] Proponents further argued that "[n]onprofit organizations *should be exempt from any business license tax or fee measured by income or gross receipts* because they would need to reduce services, raise fees, or divert staff and volunteer time to raising more funds to pay these taxes."[25]

These ballot arguments demonstrate two points. First, the exemption from fees measured by income or gross receipts was intended to protect contributions and other categories of revenue from direct taxation, which would directly reduce those revenues and the services they fund. Taxing an *expense*, however, has the opposite effect: It encourages a reduction in expenses, with an accompanying benefit to revenues. Second, nothing expressly stated in the ballot arguments supports a reading of subdivision (d)

---

[20]2A Singer, Sutherland Statutes and Statutory Construction (6th ed. 2000) Intrinsic Aids, section 47.24, pages 319-320.

[21]2A Singer, Sutherland Statutes and Statutory Construction, *supra,* Literal Interpretation, section 46.06, page 192.

[22]*Legislature v. Eu* (1991) 54 Cal.3d 492, 504 [286 Cal.Rptr. 283, 816 P.2d 1309].

[23]*Legislature v. Eu, supra,* 54 Cal.3d at page 504.

[24]Ballot Pamphlet, Primary Election (June 7, 1994) argument in Favor of Proposition 176, page 12, italics added.

[25]Ballot Pamphlet, Primary Election, *supra,* rebuttal to argument against Proposition 176, page 13, italics in original.

that is different from its plain language. Neither the subdivision's plain language nor the interpretive materials suggest an intent to prohibit all fees or any fees other than those based on a measurement that is expressly prohibited. To go beyond the express words of this constitutional provision, when no express intent to do so appears in either the text or interpretative materials, would trespass into the province of policy, which is the prerogative of the lawmaker, not the judge.

Finally, by limiting our construction of subdivision (d) to its plain language, we promote predictability in the law, which is of particular value in laws affecting economic activity: Where a provision, as here, is meant to guide the future behavior of governments and the public alike in making tax and economic decisions, respectively, reliance on the provision's plain language allows interested parties to gear their actions to the law's objective text, rather than wager their future on an uncertain quest in the courts for the law's inner meaning. We conclude that the County was entitled to rely on subdivision (d)'s text in determining to base its fee on an expense of the bingo operations—prize payouts—in lieu of one of the income-based measurements prohibited by that provision.

C.-E.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to enter an order denying the County's motion for summary adjudication with respect to the first and third causes of action and to conduct proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Morrison, Acting P. J., and Hull, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 13, 2002.

---

*See footnote, *ante,* page 507.