Filed 5/14/24  P. v. Gilbertson CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDREW WILLIAM GILBERTSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B324361<br>(Super. Ct. No. 21F-05777)<br>(San Luis Obispo County) |

Andrew William Gilbertson appeals his conviction, by jury, of attempted second degree robbery.  (Pen. Code, § 211.)[1] The trial court sentenced appellant as a third-strike offender, to a total term in state prison of 25 years to life.  Appellant contends the trial court erred in admitting evidence of a prior robbery conviction (Evid. Code, § 1101, subd. (b)) and in denying his

---

[1] All statutory references are to the Penal Code unless otherwise stated.

motion to strike one or both of his "strikes" in the interests of justice. (§ 1385.)  We affirm.

*Facts*

Appellant, who suffers from mental illness, was homeless and living in Paso Robles when he entered a Chase Bank branch at about 4 p.m.  Appellant's clothes were dirty and he spent some time fiddling with the hand sanitizer, bank envelopes and pens.  When appellant reached the teller's window, he said he wanted to exchange a $20 bill and two $10 bills for other currency.  The bills were crumpled, dirty, slightly ripped, wet and smelled of alcohol.

The teller, Tristen Arendas, told appellant that she could not accept the bills because of their condition.  He replied, "'Please, I need money.  That's all I have.'"  Appellant explained that he tried to use them at another place but that place also would not accept them.  Arendas checked with a coworker about the bills.  He agreed that they could not be accepted.  Arendas told appellant she was sorry but she couldn't help him.  He seemed upset, started begging her and then slid a bank envelope toward her on which was written:  "Give me all the money."  The teller then heard appellant say, "'I have a gun.  Who do I need to shoot?'"

Appellant was holding a white cloth bag.  Although it does not appear on the surveillance video, the teller thought she saw what could have been the end of the barrel of a gun poking against the fabric bag.  She pushed the silent alarm button and told appellant that her cash drawer was locked and she would have to go to the vault to help him.  Arendas went to the back of the bank.  Appellant waited for a few moments and then left the bank.

2

That same afternoon, appellant went into a convenience store across the street from the bank and used dirty, crumpled up $10 bills to purchase a couple of items. As he left the convenience store, appellant dropped a piece of paper. The clerk picked it up and noticed that it was a Chase Bank deposit envelope with the words, "give me all your money" written on it. He gave the envelope to the police.

Later that evening, a police officer located appellant sitting alone near the convenience store, about 250 yards from the bank. Scattered around him were shopping bags and articles of clothing. The officer recognized some of the clothes as items appellant was wearing in surveillance video from the bank. Appellant did not have a gun. The arresting officer, however, found a dark, circular pipe about 10 feet away from where appellant was sitting. The pipe seemed to be part of a broom handle and the officer thought it could have been mistaken for a gun barrel. Although the officer collected the pipe as evidence, it was not checked for fingerprints.

In an interview with police, appellant explained that he had tried to use some bills at a nearby Chevron station, but the cashier wouldn't take his money because it was dirty. He went to the bank to exchange the bills for clean money. Appellant said he never intended to rob the bank, only to exchange his dirty bills for clean ones. He wrote the note because he had laryngitis and thought the teller might not be able to hear him. When the teller rudely refused to help him, appellant left the bank.

At trial, appellant testified it was not his intention to rob the bank; he only wanted to exchange his bills for new money. He denied saying that he had a gun. Appellant did not have a

3

gun or any other sort of weapon while he was in the bank. Appellant also denied having a metal pipe and had never seen the one police found near him before his arrest.

The trial court admitted evidence that, in 2013, appellant robbed a Bank of America branch in San Luis Obispo. In that incident, appellant presented the teller with a bank deposit slip on which he had written, "'give me the money.'" Under the note was a hand drawn peace sign. The teller handed appellant a bundle of around $1,200 in cash. She triggered the silent alarm and grabbed a second stack of bills that had a GPS tracker in it. Before she could hand the second bundle to appellant, he picked up his note and the first bundle of cash and walked out of the bank without saying anything.

Appellant was arrested a few hours later outside an Atascadero barber shop. A car registered to his parents was parked nearby. In the car, officers found several hundred dollars, the clothing worn by the suspect during the bank robbery, a shopping bag carried by the robber and the note used in the robbery.

Appellant's jury convicted him of the current offense, attempted second degree robbery. (§§ 211, 664.) The trial court found he had suffered two prior "strike" convictions within the meaning of the "Three Strikes" law. (§§ 667, subd. (b)-(i), 1170.12, subd. (a)-(d).) Appellant waived jury trial on the alleged aggravating factors. (Cal. Rules of Court, rule 4.421, subds. (a)(1), (a)(2) & (b)(1)-(5).) The trial court found those factors to be true.

Appellant moved to strike one or both of his prior "strike" convictions under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. He contended that the

4

court should consider his history of mental illness as a mitigating factor under recent amendments to section 1385. The trial court declined to dismiss either of the prior strikes, but it did rely on appellant's history of mental illness in dismissing two five-year prior serious felony enhancements. (§ 667, subd. (a)(1).) It sentenced appellant to a term in state prison of 25 years to life.

*Discussion*

Evidence of Uncharged Offense. Appellant contends the trial court erred in admitting evidence of the 2013 bank robbery to prove his intent because it was cumulative of the prosecution's other evidence on that issue. We review the trial court's decision to admit evidence of uncharged offenses for abuse of discretion and find none. (*People v. Leon* (2015) 61 Cal.4th 569, 597 (*Leon*).)

As *People v. Balcom* (1994) 7 Cal.4th 414 (*Balcom*), explained, "Pursuant to Evidence Code section 1101, evidence that the defendant in a criminal prosecution committed an uncharged offense may be admitted if relevant to prove some relevant fact other than the defendant's character – such as intent or identity, or that the defendant acted pursuant to a common design or plan." (*Id.* at p. 422.) Because evidence of uncharged offenses is inherently prejudicial, that evidence is admissible only if it has "'"*substantial* probative value." . . .'" (*Ibid.*, quoting *People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).) Consequently, where the prosecution's evidence, if believed by the jury, would leave "no reasonable dispute" that the defendant "harbored the requisite criminal intent," evidence of the defendant's "uncharged similar offenses would be merely cumulative on this issue." (*Balcom, supra*, at pp. 422-423.) Under those circumstances, evidence of the uncharged offenses

5

should be excluded because its "limited probative value . . . to prove *intent*, is outweighed by [its] substantial prejudicial effect . . . ." (*Id.* at p. 423.)

The relevance of an uncharged offense is determined, in part, by its degree of similarity to the current charge. (*Leon, supra*, 61 Cal.4th at p. 598.) "The least degree of similarity . . . is required in order to prove intent. . . . In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance." . . .'" (*Ewoldt, supra,* 7 Cal.4th at p. 402.)

Appellant acknowledges that the two incidents share common features. Both robberies occurred in San Luis Obispo County. In each incident, appellant entered a bank during business hours, wrote a note on a deposit slip or envelope and handed it to the teller. The notes used similar wording, with the first saying "give me the money," and the second saying "give me all the money." In both incidents, appellant left the bank before law enforcement responded. Appellant left the bank with a bundle of cash after the first robbery, supporting a reasonable inference that he intended to do the same in the second incident.

Here, the bank teller testified that appellant said, "I have a gun. Who do I need to shoot?" In his trial testimony, appellant denied saying he had a gun, threatening to shoot or intending to rob the bank. However, he admitted entering the bank and handing the note to the teller. Appellant testified that he meant for his note to ask the teller to give him new bills in exchange for all of his old, crumpled money.

Appellant contends evidence of the first robbery was cumulative and therefore inadmissible to prove intent because no

6

reasonable juror could believe the teller and factually find that appellant threatened to shoot without also finding that he intended to rob the bank. (See, e.g., *Balcom, supra*, 7 Cal.4th at p. 423.)[2] But the evidence here was not as starkly divergent as appellant suggests. Unlike *Balcom*, the victim's credibility here was not dispositive. A reasonable juror could have found that appellant intended to rob the bank by passing the note, but that he did not say anything about a gun or shooting. Jurors could have found the teller misunderstood appellant or mistakenly recalled that part of the incident.

Evidence of the prior uncharged robbery was therefore relevant and not cumulative to prove appellant's intent in passing the note. In the first robbery, appellant's note caused the teller to give him a bundle of cash. The jury could reasonably infer that he intended to achieve the same result by passing a note in the second robbery.

Nor was the probative value of the evidence substantially outweighed by the risk of undue prejudice. (Evid. Code, § 352.) Evidence is unduly prejudicial within the meaning of Evidence Code section 352 when "'it is of such nature as to

---

[2] The defendant in *Balcom* was charged with rape; his defense was consent. The victim testified that he held a gun to her head while having intercourse with her. Our Supreme Court held evidence of a second, uncharged armed rape was cumulative and therefore inadmissible to prove intent because no reasonable juror "could have concluded that defendant committed the acts alleged by the complaining witness, but lacked the requisite intent to commit rape." (*Balcom, supra*, 7 Cal.4th at p. 422.) It also held, however, that the evidence was admissible to prove the defendant acted pursuant to a common design or plan. (*Id.* at p. 423.)

inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.'" (*People v. Doolin* (2009) 45 Cal.4th 390, 439 (*Doolin*), quoting *Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009-1009.)

The trial court here instructed the jurors that they could consider evidence of the uncharged offense only "for the limited purpose of the defendant's identity, intent, motive or lack of mistake. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime." We assume the jurors understood and followed this instruction. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 821.) Nothing about the prior offense is so inflammatory, when compared to the charge offense, that it would evoke an emotional reaction or motivate jurors to use the evidence for an illegitimate purpose. (*Doolin, supra,* 45 Cal.4th at p. 439.) Under these circumstances, the trial court did not abuse its discretion in admitting evidence of the prior robbery.

Sentencing Issues. The trial court found appellant had suffered two prior serious felony convictions: a conviction of robbery in 2013 (§ 211), and a conviction of arson of property in 2021. (§ 451, subd. (d).) The trial court further found that each prior conviction qualified as a strike for purposes of the Three Strikes law and a prior serious felony conviction for purposes of the section 667, subdivision (a)(1) five-year enhancement. Appellant filed a *Romero*[3] motion to strike one or both of his

_____

[3] *People v. Superior Court (Romero), supra,* 13 Cal.4th 497.

8

"strikes" under section 1385, citing his long history of mental illness as a mitigating factor.

At the sentencing hearing, the trial court stated that it had "taken a very hard and close look at the defendant's criminal history." It noted that he had multiple prior convictions and parole violations, beginning more than 20 years ago, some for crimes of violence. It also noted that it had "considered all of the factors in mitigation, there are many factors. The defendant clearly suffers from mental illness. He clearly has limited resources and he struggles being on the street. When I weigh all of it together, I cannot say that he falls outside the spirit of the statute," especially after considering his lengthy criminal record and the threats made to victims in this case. The trial court acknowledged its "sympathy" for appellant based on his history of mental illness, but concluded "that my struggle is more related to my sympathy . . . for [appellant] as opposed to the factors that the [trial] [c]ourt is supposed to consider." For those reasons, it denied the *Romero* motion to strike appellant's prior strike convictions.

Appellant contends the trial court erred because section 1385, subdivision (c)(2) required it to "consider and afford great weight" to evidence that this offense was connected to his mental illness. Alternatively, appellant contends the matter should be remanded for resentencing because the trial court misunderstood its discretion to dismiss the strikes based on his mental illness. We review the trial court's denial of the *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 377-378.) There was no abuse.

Amendments to section 1385 which took effect on January 1, 2022, provide guidance regarding the exercise of the

trial court's discretion to dismiss sentence enhancements in the furtherance of justice.  (*People v. Burke* (2023) 89 Cal.App.5th 237, 242-243 (*Burke*).)  Subdivision (c) of section 1385 now provides, "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (*Ibid*.)  One of the enumerated mitigating circumstances is, "The current offense is connected to mental illness."  (*Id.*, subd. (c)(2)(D).)

Appellant contends the trial court should have dismissed one or both of his prior strikes because it is undisputed that the current offense is connected to his mental illness.  We disagree.  Subdivision (c) of section 1385 expressly applies to the dismissal of an enhancement in furtherance of justice.  The Three Strikes law is an alternate sentencing scheme, not an enhancement.  (*People v. Superior Court (Romero), supra*, 13 Cal.4th at p. 527; *People v. Williams* (2014) 227 Cal.App.4th 733, 744.)  Subdivision (c) of section 1385 does not apply to the dismissal of appellant's strikes.

As the court explained in *Burke, supra,* 89 Cal.App.5th 237, "We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and

10

an alternative sentencing scheme such as the Three Strikes law. [Citation.] The Legislature did not otherwise define the word 'enhancement' in section 1385. Because the statutory language is clear and unambiguous, we follow its plain meaning . . . . The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement. We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Id.* at pp. 243-244.)

Appellant urges us to apply section 1385, subdivision (c) to his Three Strikes sentence because the Legislature intended to expand the trial court's discretion to extend leniency and impose a lower sentence. Applying the statute to enhancements but not strikes would, he contends, be an "absurd result" that we should avoid. (See, e.g., *People v. Bell* (2015) 241 Cal.App.4th 315, 351-352; *Arden Carmichael, Inc. v. County of Sacramento* (2000) 79 Cal.App.4th 1070, 1075-1076.)

We reject the contention that this result is absurd. The Legislature amended section 1385 against the backdrop of settled precedent defining the terms "enhancement" and "strike." Yet it expressly limited its amendment of subdivision (c) to enhancements, without including any reference to strikes. We presume the Legislature was aware of the legal context in which it was operating and that it "acquiesced in the previous judicial construction" of those terms. (*People v. Blakeley* (2000) 23 Cal.4th 82, 89.) Consequently, our result is not absurd; it honors the plain meaning of the statute enacted by the Legislature.

Appellant's final contention is that, even if section 1385 subdivision (c) does not apply to his *Romero* motion, the matter should be remanded for resentencing because the trial

11

court misunderstood the scope of its discretion to consider his mental illness as a mitigating circumstance.  We are not persuaded. The trial court stated that it had considered and given weight to appellant's mental illness as well as his "limited resources" and "struggles being on the street."  Even taking those factors into account, however, it concluded appellant did not "fall[] outside the spirit of the [Three Strikes] statute."  These comments demonstrate that the trial court understood its discretion under section 1385 and concluded it would not be in the furtherance of justice to dismiss his prior strikes.  (See, e.g., *Burke, supra,* 89 Cal.App.5th at pp. 242-243.)  This determination was not an abuse of discretion.

<em>Conclusion</em>

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

                                                          YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

12

Timothy S. Covello, Judge

Superior Court County of San Luis Obispo

_____

Law Offices of John Derrick and John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, Gabriel Bradley, Deputy Attorney General, for Plaintiff and Respondent.