[No. C059062. Third Dist. Nov. 18, 2010.]

EMPLOYMENT DEVELOPMENT DEPARTMENT, Plaintiff and
Respondent, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
SCREAMING EAGLE, INC., Real Party in Interest and Appellant.

**COUNSEL**

Wheeler & Sheehan, David Carroll Wheeler, Jennifer L. DeLoach; Littler Mendelson and William Hays Weissman for Real Party in Interest and Appellant.

Littler Mendelson, G. J. Stillson MacDonnell and William Hays Weissman for Strategic Outsourcing, Inc., as Amicus Curiae on behalf of Real Party in Interest and Appellant.

Sandra Hughes, Barbara S. Kaufman and Theodore S. Goodwin for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

Nielsen, Merksamer, Parrinello, Mueller & Naylor, Richard D. Martland, Eric J. Miethke and Kurt R. Oneto for California Chamber of Commerce and California Taxpayers' Association as Amici Curiae on behalf of Defendant and Respondent.

## Opinion

**RAYE, J.**—In State Unemployment Tax Act (SUTA) "dumping," one employer transfers employees or payroll wages to another employer in order to take advantage of the other employer's lower unemployment insurance tax rate. In essence, the first employer "dumps" payroll with a higher contribution rate into the second employer's unemployment insurance account with a lower rate. The Legislature directed plaintiff Employment Development Department (Department) to stop such rate manipulation and provided a procedure for doing so.

Real parties in interest Screaming Eagle, Inc., and Payday California, Inc. (Payday), provide payroll services for television production companies. The Department issued an assessment against Screaming Eagle for underpaying its unemployment insurance contributions. An administrative law judge (ALJ) determined the assessments should be set aside because the Department had not followed the appropriate procedures. Defendant California Unemployment Insurance Appeals Board (Appeals Board) affirmed the ALJ's decision. The trial court reversed the Appeals Board, finding the Department's assessment comported with the statutory requirements.

Screaming Eagle appeals, challenging the trial court's interpretation of the statutory scheme for determining whether rate manipulation is taking place and issuing assessments based on such a determination. Amici curiae Strategic Outsourcing, Inc., California Chamber of Commerce, and California Taxpayers' Association filed briefs in support of Screaming Eagle and the Appeals Board. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves the interplay between two statutes: Unemployment Insurance Code sections 135.2 and 1127.5.[1] Because the parties' contentions relate to the specific wording of each statute, we present them in their entirety.

Section 135.2 pertains to two or more businesses constituting one employing unit and states: "(a) If two or more business enterprises are united by factors

---

[1] All further statutory references are to the Unemployment Insurance Code unless otherwise indicated.

of control, operation, and use, the [D]irector [of Employment Development] may determine that the business enterprises are one employing unit. [¶] (1) Control of a business enterprise shall include, but not be limited to, ownership of a majority interest in an organization, ownership of the assets used to conduct the business enterprise of the organization, security arrangements or lease arrangements regarding the assets used to conduct the business enterprise of the organization, or contract when the ownership, stated arrangements, or contract provide for or allow operation of the business enterprise. [¶] (2) Operation of the business enterprise, includes, but is not limited to, management, personnel policies, operating procedures, pricing, collections, and financing of the business enterprise. [¶] (3) Control of two or more business enterprises shall be united if the majority interest in, or control of, each organization is in one individual, entity, association, or other organization. [¶] (4) Unity of operation is evidenced by central financing, accounting, and management of each business enterprise which includes, but is not limited to, common management, personnel policies, operating procedures, pricing, collections, and financing. [¶] (5) The use of two or more business enterprises shall be united if they share a general system of operation and the enterprises are organized for common purposes, and each is coordinated with, or is a part of, the entire operation. [¶] *(b) This section shall be subject to subdivision (e) of Section 982 and subdivision (d) of Section 1127.5.*" (Italics added.)[2]

Section 1127.5 governs the determination of correct employers and the reporting of entities not correct employers, and states: "(a) If the director determines that an individual or entity that is reporting employee wages pursuant to Section 1088 or other applicable sections is not the correct employer of the employees whose wages are reported, the director shall determine the correct employer and, subject to this section, shall apply the provisions of this code to the correct employer. [¶] (b) Upon a determination made under subdivision (a), the director shall give notice of the determination pursuant to Section 1206 to both of the following: [¶] (1) To the individual or entity reporting employee wages of the determination that the individual or entity is not the correct employer of the reported employees. [¶] (2) To the individual or entity determined to be the correct employer of those reported employees. [¶] The notice shall contain a statement of the facts and circum-

---

[2] Subdivision (e) of section 982 states: "The contribution rate of an employer, for any period prior to January 1, 1988, shall not be changed, other than by the provisions of Sections 977 and 977.5, when the director makes a determination, pursuant to Section 135.1 or 135.2, because of arrangements entered into or business activities conducted between January 1, 1984, and January 1, 1986."

stances upon which the determination was based. An individual or entity so noticed shall have the right to petition for review of the determination within 30 days of the notice, as provided in Section 1222. [¶] (c) During the pendency of a petition for review pursuant to subdivision (b), the individual or entity responsible for reporting employee wages pursuant to Section 1088 or other applicable sections shall be determined as follows: [¶] (1) When an individual or entity that has reported employee wages appeals a director's determination that it is not the correct employer of the employees whose wages were reported, that individual or entity shall continue to so report employee wages, provided the employees in question are still on its payroll, until a decision on its appeal is final, whether or not the individual or entity determined to be the correct employer by the director appeals that determination. [¶] (2) When the individual or entity determined by the director to be the correct employer appeals that determination, but the individual or entity determined not to be the correct employer does not appeal the director's determination, then the individual or entity determined to be the correct employer by the director shall report employee wages from the date it received notification pursuant to subdivision (b), and, provided the employees in question are still on its payroll, shall continue to do so at least until a decision on its appeal is final. [¶] *(d) When a director's determination that an individual or entity is the correct employer of employees whose wages have been reported by another individual becomes final:* [¶] *(1) The individual or entity so determined to be the correct employer may be assessed for any underpayment of employer contributions pursuant to Article 8 (commencing with Section 1126) of Chapter 4 of Part 1 of Division 1. No assessment shall be issued for any period prior to the effective date of this section based on which individual or entity is the correct employer, unless the correct employer committed fraud in violation of this part.* [¶] *(2) The individual or entity which had reported employee wages prior to the finality of the director's determination of the correct employer of the employees whose wages were so reported may file a claim for refund for any overpayment of employer contributions pursuant to Section 1178. No claim for refund may be filed for any period prior to the effective date of this section based on which individual or entity is the correct employer unless the department has issued an assessment based on fraud pursuant to paragraph (1).*" (Italics added.)

*The Department's Actions*

Real parties in interest Screaming Eagle and Payday provide payroll services to entertainment business clients. The two companies process time records, compute wages and taxes, issue paychecks, withhold and pay taxes, and file tax reports for companies that produce television programs and commercials.

Screaming Eagle and Payday are run by the same person, operate from the same office, share the same corporate officers and administrative staff, and share the same address and telephone numbers. In addition, they share the same centralized management and accounting system.

In 2002 Screaming Eagle reported a payroll of $16.4 million at an unemployment insurance contribution rate of 0.7 percent. In 2003, after the Department assigned Screaming Eagle an unemployment insurance rate of 5.4 percent, Screaming Eagle's reported payroll dropped to $1,500. In contrast, after the Department assigned Payday a rate of 1.7 percent in 2003, it reported a payroll of $14.4 million for the first three quarters, a steep increase from its payroll the previous year of $11,250.

In November 2003 a Department auditor prepared a report in which she concluded that Screaming Eagle and Payday were a single employing unit. After analyzing the payroll transfers between the two entities, the Department issued an assessment of $600,123.39, based on the difference between the contributions paid at the 1.7 percent rate and the amount that should have been paid at the assigned 5.4 percent rate.

The notice of assessment was accompanied by a notice of duplicate accounts, informing real parties in interest that the Department had discontinued Payday's account and ordering both companies to report all further payroll contributions under Screaming Eagle's account at the rate of 5.4 percent. Subsequently, the Department issued a second assessment covering the fourth quarter of 2003 in the amount of $135,521.45 plus penalty and interest, based on the same grounds as the first assessment. Screaming Eagle and Payday petitioned for review of the assessments, ultimately arguing that the Department erred in not following the procedure set forth in section 1127.5, subdivisions (a) through (d).

*The ALJ'S Decision*

Following an evidentiary hearing, the ALJ determined the Department's assessments against Screaming Eagle should be set aside. The ALJ considered the statutes in question and framed the issue: "The basic question is did the legislature intend only to be authorizing the department to use its normal assessment procedures when it referenced subdivision (d) of 1127.5 in section 135.2, or did it expect the department to then also follow the previous subdivisions of section 1127.5 before issuing an assessment when making a determination under section 135.2."

The ALJ considered the wording of the statutes, noting: "[Subdivision] (d) of 1127.5 includes more than just a cross-reference to the normal assessment procedures. It also provides that the assessments are *not to be made until after the director's determination becomes final.* Subdivisions (a) and (b) do provide a procedure to determine when the director's decision becomes final. There are no other provisions of the [Unemployment Insurance] Code which provide a process for determining when the decision is final. Normally, the department makes a decision and issues an assessment as a result of that decision. There is no process or necessity to determine if that decision is final. These are unique provisions added to section 1127.5. [¶] . . . It is also apparent that by referencing 1127.5(d), the legislature must have intended that the director's decision under 135.2 become final under 1127.5 before an assessment resulting from that decision is issued."

The ALJ applied this interpretation of the statutes to the Department's assessment against Screaming Eagle and concluded: "[T]he assessment and the determination under section 135.2 were made on the same day. The assessment was not made after the director's decision under 135.2 had become final pursuant to section 1127.5. Accordingly, the assessment was premature under section 1127.5 and is therefore set aside." The Department appealed the ALJ's decision to the Appeals Board.

*The Appeals Board Decision*

The Appeals Board affirmed the ALJ's ruling, finding the Department's assessments against Screaming Eagle were premature since the Department failed to comply with section 1127.5. The Appeals Board reasoned: "We agree with the finding of the administrative law judge that the legislature considered the unity of enterprise determination by the director under code section 135.2 duplicated the requirements of section 1127.5(a), (b) and (c); and, section 1127.5(d) was referenced in section 135.2 to insure that the director's determination under 135.2 is final under section 1127.5 before an assessment is issued as a result of the unity of enterprise determination."

*The Trial Court's Decision*

The Department filed a petition for writ of mandate and administrative mandamus. The trial court granted the petition for writ of administrative mandate, setting aside the Appeals Board's decision and directing the Appeals Board to enter a decision reinstating the assessments against Screaming Eagle.

The trial court held that the Board's interpretation of section 135.2's reference to section 1127.5, subdivision (d)—making the notice and hearing

procedures of section 1127.5, subdivisions (a) through (c) "applicable to unity of enterprise determinations under section 135.2 and preventing petitioner from issuing an assessment resulting from a unity of enterprise determination until the procedures in subdivisions (a), (b) and (c) have been completed—is incorrect. Respondent's interpretation is contrary to the language of section 135.2, the language of the statutory provisions referenced in 135.2, the legislative history of section 135.2, and the practical operation of assessments resulting from unity of enterprise determinations under section 135.2."

Under the court's analysis, section 135.2 makes no mention of subdivisions (a), (b) or (c) of section 1127.5 and gives no "clear indication, express or implied, [that the reference to] subdivision (d) of section [1127.5] is intended to subject a unity of enterprise determination under 135.2 to the notice and hearing procedures for a correct employer determination in subdivisions (a), (b) or (c) of section 1127.5 before an assessment resulting from the unity of enterprise determination is final. . . ."

The court also examined the language of section 982, subdivision (e), also referenced in section 135.2, and determined: "This common focus of subdivision (e) of section 982 and subdivision (d) of section 1127.5 on retroactive operations strongly suggests that both statutory provisions are referenced in subdivision (b) of section 135.2 for the purpose of limiting the retroactive effect of section 135.2 unity of enterprise determinations and not for the purpose of prescribing notice and review procedures that must be completed before an assessment resulting from a unity of enterprise determination may be issued."

After reviewing the legislative history of section 135.2, the trial court noted the committee analyses referenced retroactivity, but gave no indication that the notice and review provisions of section 1127.5 would apply to a unity of enterprise determination under section 135.2.

Finally, the trial court considered the differences between a correct employer determination under section 1127.5 and a unity of enterprise determination under section 135.2: "Accordingly, upon a unity of enterprise determination, only the consolidated employing unit need be assessed; notice of the assessment need only be served on the consolidated employing unit; only the consolidated employing unit has a right to petition for review or reassessment; responsibility for reporting employee wages pending review need not be assigned to one of a number of employing units. In short, an assessment

resulting from a unity of enterprise determination can properly and practically proceed under the general assessment procedure in sections 1127, 1131, 1206, 2222, 2223 and 2224."[3]

The court concluded: "Thus, the adaptations of the general assessment procedure necessary for a section 1127.5 correct employer determination involving two distinct . . . employing units are not necessary, practical or even relevant to a section 135.2 unity of enterprise determination involving a single, consolidated employing unit. Conditioning the issuance of an assessment resulting from a unity of enterprise determination upon the completion of the notice and review procedures under subdivisions (a), (b) and (c) of section 1127.5 for a correct employer determination can be expected to produce only absurd administrative activities and needless delay."

Screaming Eagle filed a timely notice of appeal. We granted the requests by Strategic Outsourcing, Inc., California Chamber of Commerce, and California Taxpayers' Association to file amicus curiae briefs in support of Screaming Eagle and the Appeals Board.[4]

## DISCUSSION

### I

In essence, this appeal asks us to determine whether section 135.2, subdivision (b), by incorporating by reference subdivision (d) of section 1127.5, also incorporates subdivisions (a), (b), and (c) of section 1127.5. The ALJ and the Appeals Board reasoned that the Legislature must have intended to make all of section 1127.5 applicable to unity of enterprise determinations. The trial court disagreed, finding the legislative history failed to support this interpretation and holding that only section 1127.5, subdivision (d) applies to a unity of enterprise determination under section 135.2. Which interpretation is correct?

---

[3] The trial court's reference to sections 2222, 2223, and 2224 appears to be an incorrect reference to sections 1222, 1223, and 1224, which apply to appeal rights from decisions by the Department.

[4] Amici curiae California Chamber of Commerce and California Taxpayers' Association filed a request for judicial notice on June 19, 2009. We grant the request as to exhibits 3 through 16 and 21 through 25. We deny the request as to exhibits 1 and 2, and exhibits 17 through 20. Exhibits 1 and 2 are informal documents offered as general information to the public, and exhibits 17 through 20 are decisions by the Appeals Board, which have no precedential effect. Amicus curiae Strategic Outsourcing filed a request for judicial notice on June 24, 2009. We grant the request as to exhibits 2 through 9. We deny the request as to exhibits 1 and 11 because they are decisions by the Appeals Board, which have no precedential effect. We also deny the request as to exhibit 10 because it is an informal informational document. Finally, the Department filed a request for judicial notice on August 12, 2009. We grant the request.

■ We begin by reiterating the well-worn guidelines for construing statutory language. "We interpret statutory language according to its usual and ordinary import, keeping in mind the apparent purpose of the statute. [Citation.] When no ambiguity appears, we give statutory terms their plain meaning." (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493 [59 Cal.Rptr.2d 20, 926 P.2d 1114].)

■ A statute is regarded as ambiguous if it is capable of two constructions, both of which are reasonable. When a statute is ambiguous, we may consider evidence of the Legislature's intent beyond the words of the statute. We also review a variety of extrinsic aids, including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any consideration of constitutionality, in an attempt to ascertain the most reasonable interpretation of the measure. (*Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 358–359 [127 Cal.Rptr.2d 516, 58 P.3d 367]; *Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

## II

■ We must determine the interplay between two types of determinations the Department may make under the statutory scheme. Sections 135.1 and 135.2 codify the concept of unity of enterprise. Under these provisions, the Department is authorized to consolidate multiple businesses united by factors of ownership or control into a single employing unit for purposes of determining the rate of employer contributions. (*American Employers Group, Inc. v. Employment Development Dept.* (2007) 154 Cal.App.4th 836, 842 [65 Cal.Rptr.3d 233] (*American Employers*).)

These sections are aimed at preventing a tax evasion practice known as "SUTA dumping," the practice of manipulating state account numbers and the unemployment insurance rating process. When a low unemployment insurance tax rate is obtained, payroll from another entity with a high unemployment insurance tax rate is shifted to the account with the lower rate. The entity with the higher rate is than "dumped." The entity inactivates the account with the higher rate and the charges are apportioned to the rest of the employers in the state. This practice leaves other employers making up for the unpaid tax. SUTA dumping is also known as state unemployment tax avoidance and unemployment tax rate manipulation. (*American Employers, supra*, 154 Cal.App.4th at p. 839.)

■ Section 1127.5 addresses a determination by the Department that an individual or entity is not the correct employer of the employee for whom it is reporting wages. When the Department makes such a determination, the Department is required to give notice of the determination to the correct employer and the employer who has been reporting the wages. The entity that receives the notice has the right to petition for review within 30 days as provided in section 1222. If the employer that is determined not to be the correct employer appeals that determination, the employer continues to report employee wages until a decision on appeal is final. If the employer that is determined to be the correct employer appeals that determination, but the employer determined not to be the correct employer does not appeal, the employer determined to be correct is to report the wages until a decision on its appeal is final. (§ 1127.5, subds. (b) & (c); *American Employers, supra,* 154 Cal.App.4th at p. 842.)

Into this mix drops section 135.2, subdivision (b), which states that section 135.2 "shall be subject to subdivision (e) of Section 982 and subdivision (d) of Section 1127.5." Section 1127.5, subdivision (d) states: "When a director's determination that an individual or entity is the correct employer of employees whose wages have been reported by another individual becomes final: [¶] (1) The individual or entity so determined to be the correct employer may be assessed for any underpayment of employer contributions . . . . No assessment shall be issued for any period prior to the effective date of this section based on which individual or entity is the correct employer, unless the correct employer committed fraud in violation of this part. [¶] (2) The individual or entity which had reported employee wages prior to the finality of the director's determination of the correct employer of the employees whose wages were so reported may file a claim for refund for any overpayment of employer contributions . . . . No claim for refund may be filed for any period prior to the effective date of this section based on which individual or entity is the correct employer unless the department has issued an assessment based on fraud pursuant to paragraph (1)."

### III

Screaming Eagle argues the phrase "When a director's determination that an individual or entity is the correct employer of employees whose wages have been reported by another individual becomes final" demonstrates that "becomes final" in section 1127.5, subdivision (d) must refer to a final decision reached after the director's determination, notice, and hearing as provided in section 1127.5, subdivisions (a), (b), and (c). Therefore, "[b]y making unity of enterprise determinations subject to retroactivity provisions that apply only to correct employer assessments, the Legislature must have intended that assessments based on unity of enterprise determinations would

be 'correct employer' assessments." Under Screaming Eagle's analysis, assessments based on unity of enterprise determinations are correct employer assessments, and the procedure for correct employer assessments applies to assessments based on unity of enterprise determinations.

However, section 135.2 references *only* section 1127.5, subdivision (d); it makes no mention of the other subdivisions, nor does it use the term "correct employer." Faced with this gap, Screaming Eagle asserts: "If the Legislature really had intended that assessments based on unity of enterprise determinations were not correct employer assessments and would not be governed by section 1127.5, then the Legislature made a mistake. First, the Legislature said something that it did not mean to say: unity of enterprise determinations are subject to section 1127.5(d). Second, the Legislature did not say what it really meant to say: assessments based on unity of enterprise determinations are not subject to section 1127.5."

There is a third alternative: the Legislature referenced section 1127.5, subdivision (d) as to its effective date, not as a means of conflating unity of enterprise determinations and correct employer assessments. The reference to section 982, subdivision (e); the legislative history; and the overall statutory scheme support this interpretation.

## IV

Section 135.2, subdivision (b) references section 982, subdivision (e) as well as section 1127.5, subdivision (d). Section 982, subdivision (e) provides that the contribution rate of an employer for any period prior to January 1, 1988 (when § 135.2 became effective) would not be changed by a determination under section 135.2 based on arrangements entered into or business activities conducted between January 1, 1984, and January 1, 1986. Subdivision (e) limits retroactive application of section 135.2 determinations with respect to unemployment insurance contribution rates determined under section 982.

In a similar vein, subdivision (d) of section 1127.5 states no assessment may be issued and no claim for refund may be filed with respect to a correct employer determination prior to the effective date of section 1127.5 on September 15, 1986. (See Stats. 1986, ch. 793, § 2, p. 2678.) Both statutes referenced in section 135.2, subdivision (b) limit the retroactive effect of section 135.2 unity of enterprise determinations.

Screaming Eagle disagrees strenuously with this analysis. According to Screaming Eagle, the Legislature would not have used the words "subject to . . . subdivision (d) of section 1127.5" if it meant to make section 135.2 subject only to a small portion of section 1127.5, subdivision (d). Instead, the provisions dealing with section 1127.5's effective date are provisions that, by their own terms, deal with correct employer assessments, and correct employer assessments are governed by subdivisions (a), (b), and (c) of section 1127.5.

■ One could just as easily argue that had the Legislature intended to make unity of enterprise determinations subject to the procedure applicable to correct employer assessments, it would have stated section 135.2 was subject to the entirety of section 1127.5, not just subdivision (d). If the Legislature has included one provision in one part of a statute but excluded it from another, the court should not imply the omitted provision in the part of the statute that does not contain it. (*People ex rel. Gwinn v. Kothari* (2000) 83 Cal.App.4th 759, 770 [100 Cal.Rptr.2d 29].) Given the unity of focus on retroactivity in sections 982, subdivision (e) and 1127.5, subdivision (d), the Legislature appears to have intended to reference the latter statute to incorporate the limitations section of section 1127.5, subdivision (d), not the entire statutory scheme for correct employer assessments.

## V

In addition, as the trial court pointed out, the legislative history of section 135.2 reveals the references to sections 982 and 1127.5 were intended to limit the retroactive effect of unity of enterprise determinations on unemployment insurance contribution rates. The court quoted a committee analysis for the bill enacting section 135.2: "The bill would also specify that its provisions would not modify current law relating to the liability of successor employing units for unpaid unemployment insurance taxes of acquired employers, and would not retroactively affect either (1) tax assessments resulting from the director's determination of a correct employer for purposes of reporting wages or (2) the entitlement to the fixed 'new employer' unemployment insurance tax rate." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 891 (1987–1988 Reg. Sess.) Aug. 18, 1987, p. 2; see Sen. Industrial Relations Com., Analysis of Assem. Bill No. 891 (1987–1988 Reg. Sess.) as amended May 7, 1987, pp. 2–3.)

Our review of the legislative history of section 135.2 supports the trial court's conclusion. According to the report of the Employment Development Department, sections 135.1 and 135.2 were aimed at rectifying the problem that then existing law did not codify the concept of unity of enterprise. This resulted in a variety of interpretations of the concept. The proposed statutes

would codify the concept of unity of enterprise by placing emphasis on "control" rather than "ownership." (Employment Development Dept., Analysis of Assem. Bill No. 891 (1987–1988 Reg. Sess.) Apr. 7, 1987.) Under "Justification," the Department stated: "This proposal would both codify and clarify the Unity of Enterprise doctrine. It would prevent future abuse of this system by entities who would manipulate the system in order to pay less than their fair share of [unemployment insurance] contributions." (*Ibid.*)

The legislative history underpinning sections 135.1 and 135.2 underscores the focus and purpose of the statutes: to codify the unity of enterprise doctrine as an issue of control rather than ownership. Incidental to this legislative purpose is the intent to "not modify current law relating to the liability of successor employing units for unpaid unemployment insurance taxes of acquired employers, and . . . not retroactively affect" either tax assessments resulting from the director's determination of a correct employer for the purpose of reporting wages, or the entitlement to the fixed new employer rate. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 891 (1987–1988 Reg. Sess.) Aug. 18, 1987, p. 2; see Sen. Industrial Relations Com., Analysis of Assem. Bill No. 891 (1987–1988 Reg. Sess.) as amended May 7, 1987, pp. 2–3.)

■ However, nothing in the legislative history reflects a legislative intent to apply section 1127.5, subdivisions (a), (b), and (c) to the unity of enterprise determination made under sections 135.1 and 135.2. While every word of a statute must be presumed to have been used for a purpose, every word excluded from a statute must be presumed to have been excluded for a purpose. (*Arden Carmichael, Inc. v. County of Sacramento* (2001) 93 Cal.App.4th 507, 516 [113 Cal.Rptr.2d 248].) Here, in section 135.2, the Legislature excluded any reference to section 1127.5, subdivisions (a), (b), and (c). ■ Nothing in the record supports Screaming Eagle's assertion that the Legislature intended compliance with section 1127.5, subdivisions (a), (b), and (c) as a prerequisite to the Department's issuance of assessments against employers determined to be unified enterprises under sections 135.1 and 135.2.

## VI

■ In addition, the overall statutory scheme supports reading section 135.2 as incorporating only section 1127.5, subdivision (d), not the entirety of section 1127.5 and its concomitant requirements for correct employer determinations. ■ We are reminded that statutes should not be construed in isolation. Rather, we construe every statute with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 754–755 [135 Cal.Rptr.2d 433].)

Screaming Eagle argues the Legislature meant for "unity of enterprise" determinations and "correct employer" assessments to refer to the same thing. However, the statutes refer to two different determinations involving two different procedures.

Under section 1127.5, if the Department determines an entity that is reporting wages is not the correct employer, it determines the correct employer, gives the correct and noncorrect employer notice, and informs both employers of the right to petition for review of the determination. (§ 1127.5, subds. (a), (b).) While review is pending, the noncorrect employer continues to report the wages. (§ 1127.5, subd. (c).) In making a correct employer determination, the Department is trying to determine who should be reporting wages, not seeking to prevent SUTA dumping.

In contrast, section 135.2 authorizes the Department to determine that business enterprises are one unit employing the factors set out in the statute. Section 135.2 represents an effort on the part of the Legislature to prevent SUTA dumping, that is, an employer's shifting of employees to a less taxed entity it controls. In this situation, only the employer that should be reporting wages, the consolidated employer, needs to be assessed and notified of the assessment. Only the consolidated employer has the right to petition for review or reassessment under section 1222.[5]

The issue in a unity of enterprise determination is not which of two employers is the correct employer, but whether or not an employer is basically a nonindependent entity whose purpose is to avoid paying a higher unemployment insurance tax rate. Therefore, unlike in the correct employer situation, there is no need to assign responsibility for reporting employee wages to one employer pending review. Section 1127.5, subdivisions (a), (b), and (c) set forth a procedure for two distinct employers; a unity of enterprise determination delineates one consolidated employer that does not require the same procedures.

---

[5] Section 1222 states: "Within 30 days of service of any notice of assessment or denial of claim for refund or credit under Section 803, 821, or 991, or of any notice under Sections 704.1, 1035, 1055, 1127.5, 1131, 1142, 1143, 1144, 1180, 1184, 1733, and 1735, any employing unit or other person given the notice, or any employing unit affected by a granting or denial of a transfer of reserve account, may file a petition for review or reassessment with an administrative law judge. The administrative law judge may for good cause grant an additional 30 days for the filing of a petition. If a petition for reassessment is not filed within the 30-day period, or within the additional period granted by the administrative law judge, an assessment is final at the expiration of the period. If a petition for review of a termination of elective coverage under Section 704.1 is not filed within the 30-day period, or within the additional period granted by the administrative law judge, the termination is final at the expiration of the period. If the director fails to serve notice of his or her action within 60 days after a claim for refund or credit is filed, the person or employing unit may consider the claim denied and file a petition with an administrative law judge."

## VII

Amicus curiae Strategic Outsourcing argues that the Department made a "correct employer" determination under section 1127.5, not a "unity of enterprise" determination under sections 135.1 and 135.2, when it assessed Screaming Eagle. In support, Strategic Outsourcing references language in the Department's letter that accompanied the notice and assessment.

However, the language Strategic Outsourcing quotes from the Department's letter dated November 6, 2003, does not state that an incorrect employer was reporting payroll, or that the Department made a correct employer determination. Instead, the Department requested additional information to determine whether Screaming Eagle and Payday had used incorrect account numbers for previous years to lower their unemployment insurance rate. The Department sought to ascertain whether the company was "[s]witching payroll to lower rated accounts for the purpose of lowering [unemployment insurance] taxes," that is, SUTA dumping. The accompanying notice of assessment does not reference section 1127.5. A reference to incorrect account numbers does not transform the Department's assessment from a unity of enterprise assessment to a correct employer assessment.

Strategic Outsourcing also contends the trial court's interpretation of the statutory scheme violates Payday's due process rights by allowing the Department to seize Payday's employer account without a hearing. However, Screaming Eagle and Payday both appeared at the administrative hearing represented by counsel. Both entities received notices of assessment and of the evidence against them. At the hearing, both presented evidence and cross-examined witnesses. We find no due process violation.[6]

## VIII

### A

Amici curiae California Chamber of Commerce and California Taxpayers' Association (amici curiae) argue the Appeals Board's construction of sections 135.2 and 1127.5 must be upheld because it is not clearly erroneous or

---

[6] Strategic Outsourcing challenges the trial court's interpretation of section 135.2, subdivision (b). We have addressed the court's conclusions above.

unauthorized. In a related argument, amici curiae contend the court erred in granting no deference to the Appeals Board's interpretation of an ambiguous statute.

Amici curiae seize upon the trial court's statement that the "reference to subdivision (d) of section 1127.5 is stated in the most general of terms and its purpose is unspecified and ambiguous." According to amici curiae, since the Appeals Board is charged with administering the statute, its interpretation should be granted deference unless the interpretation is clearly erroneous or unauthorized. Because the trial court merely found the statute "ambiguous," the court should have deferred to the Appeals Board and upheld its construction of the interplay between the statutes.

As amici curiae note, the Supreme Court has determined that because of the Appeals Board's expertise, "its view of a statute or regulation it enforces is entitled to great weight unless clearly erroneous or unauthorized. [Citations.] Courts may not substitute their judgment for that of the agency on matters within the agency's discretion." (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244].) In *Pacific Legal*, the court reversed the trial court's decision and adopted the Appeals Board's construction of a statute governing whether an employee seeking unemployment benefits is available for work. The court found, under the factual circumstances and "according the board the deference due its application of unemployment insurance law, . . . that it is a reasonable interpretation" to conclude the employee had complied with the governing instructions. (*Id.* at pp. 112–113.)

Amici curiae argue the Appeals Board was created for the purpose of conducting hearings and resolving disputed unemployment decisions and tax assessments; therefore, its determination must be upheld unless it is "clearly erroneous or unauthorized." However, amici curiae contend the trial court disregarded the Appeals Board's interpretation merely because the statute was "unspecified and ambiguous."

Amici curiae selectively read the record. The trial court held the Appeals Board's interpretation of section 135.2's reference to section 1127.5 was incorrect and "contrary to the language of section 135.2, the language of the statutory provisions referenced in 135.2, the legislative history of section 135.2, and the practical operation of assessments resulting from unity of enterprise determinations under section 135.2."

The trial court did not determine the statutes were "ambiguous" and supplant the Appeals Board's interpretation with its own. Instead, the court found the Appeals Board's interpretation was incorrect, another term for "clearly erroneous." Our analysis supports the trial court's conclusion.

**B**

Amici curiae argue the trial court's interpretation of the statutes results in a "collect first, adjudicate later" approach that is antithetical to the state's tax system. We disagree.

A taxpayer must pay all contested taxes prior to seeking judicial review of a tax dispute if the net result would be to enjoin or prevent any step in the tax assessment and collection process. (*People ex rel. Franchise Tax Bd. v. Superior Court* (1985) 164 Cal.App.3d 526, 545 [210 Cal.Rptr. 695].) Under the California Constitution, "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (Cal. Const., art. XIII, § 32.)[7]

**C**

Amici curiae also dispute the trial court's reading of the legislative history behind the statutes, terming it incomplete and "akin to watching only the last 10 minutes of a movie and then extrapolating the entire storyline from the same." In support, amici curiae quote from correspondence from the Department regarding the initial draft of section 1127.5. However, amici curiae fail to explain how a few comments by the Department during the legislative process indicate the Legislature's intent to make a unity of enterprise determination under section 135.2 a correct employer determination under section 1127.5. As for the rest of amici curiae's legislative history contentions, we have considered the legislative histories of the statutes above and find they support the trial court's reading of the legislative intent behind the statutes. Nothing presented by amici curiae refutes our determination.[8]

---

[7] Section 1851 also provides "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding, in any court against this State or against any officer thereof to prevent or enjoin the collection of any contribution sought to be collected under this division."

[8] Amici curiae's remaining arguments challenge the trial court's interpretation of the statutes. We have discussed the trial court's interpretation above.

## DISPOSITION

The judgment is affirmed. Department shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Scotland, Acting P. J.,* and Nicholson, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 16, 2011, S189314.

---

*Retired Presiding Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.