Filed 11/13/23  P. v. Paniagua CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARIEL BAKER PANIAGUA et al.,<br><br>    Defendants and Appellants. | B324440<br><br>(Los Angeles County Super. Ct. No. LA081995) |

APPEALS from a judgment and order of the Superior Court of Los Angeles County, Thomas Rubinson, Judge.  Paniagua's judgment is affirmed as modified.  The order denying Martinez's petition under section 1172.6 is reversed with directions.

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant Ariel Baker Paniagua.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant Hubaldo Martinez.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

This is Ariel Baker Paniagua's third appeal and Hubaldo Martinez's second. Paniagua appeals from the judgment entered after the trial court resentenced him (a second time) following his second appeal (*People v. Paniagua* (Feb. 28, 2022, B313479) [nonpub. opn.] (*Paniagua II*)). Paniagua and Martinez were convicted of various crimes, some of which they committed together and some of which Paniagua committed on his own.

Paniagua argues that the trial court abused its discretion in declining to dismiss any enhancements under the 2022 amendments to Penal Code section 1385 (Sen. Bill No. 81, Stats. 2021 (2021-2022 Reg. Sess.), ch. 721, § 1),[1] which added subdivision (c) to require the court to dismiss an enhancement under certain circumstances if it is in the interest of justice to do so. Paniagua also argues that the evidence at his trial does not support a true finding on the gang allegation under the 2022 amendments to section 186.22 (Assem. Bill No. 333 (2021-2022 Reg. Sess.)) and that, if he forfeited this argument, his appellate counsel provided ineffective assistance by failing to raise it in *Paniagua II*. We conclude that the trial court did not abuse its discretion in (re)sentencing Paniagua under section 1385,

_____

[1] Statutory references are to the Penal Code.

2

subdivision (c), that Paniagua forfeited his argument the gang enhancements should be vacated under amended section 186.22, and that Paniagua has not demonstrated his appellate counsel provided ineffective assistance. Therefore, we modify Paniagua's sentence to strike an enhancement we reversed in a nonpublished opinion (*People v. Paniagua* (Nov. 4, 2019, B289253) [nonpub. opn.] (*Paniagua I*)), and affirm.

Martinez, who pleaded no contest to voluntary manslaughter, appeals from the superior court's order denying his petition for resentencing under section 1170.95 (now section 1172.6). Martinez argues the court applied the wrong standard of proof at the evidentiary hearing. We reverse the order denying Martinez's petition for resentencing and direct the court to hold a new evidentiary hearing and apply the proper standard of proof under section 1172.6, subdivision (d)(3).

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Paniagua and Martinez Participate in a Shooting; One Week Later, Paniagua Commits Another Shooting*

On October 6, 2015 Paniagua and Martinez, both members of the same criminal street gang, drove into the neighborhood of a rival gang. Martinez stopped the car next to Victor Castillo; Paniagua got out of the car, asked Castillo if he was associated with the rival gang, and showed Castillo a handgun in his waistband and a gang tattoo across his chest. Castillo said he did not belong to any gang, and Paniagua got back into the car. Martinez drove to a marijuana dispensary and pulled his car behind another car with occupants Paniagua believed belonged to the rival gang. Paniagua got out of the car, shouted "Fuck

3

Canoga" (the name of the rival gang), and fired several shots into the car. One bullet hit one of the occupants of the car; another hit and killed the driver of a car parked down the street. After the shooting, Martinez drove off with Paniagua.

One week later, Paniagua fired shots into another car. The bullets did not hit anyone, and the car sped off after the shooting. Martinez did not participate in this shooting. (*Paniagua I, supra*, B289253.)

B. *The People Charge Martinez and Paniagua with Various Crimes; Martinez Pleads No Contest, and a Jury Convicts Paniagua; Both Are Sentenced*

The People charged Paniagua and Martinez with, among other crimes, one count of murder (§ 187, subd. (a)) and three counts of attempted willful, deliberate, and premeditated attempted murder (§§ 187, subd. (a), 664, subd. (a)). The People also charged Paniagua with offenses related to the second shooting in which Martinez did not participate.

Martinez pleaded no contest to voluntary manslaughter (§ 192, subd. (a)) and admitted he had a prior felony conviction that was a serious or violent felony within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a serious felony within the meaning of section 667, subdivision (a)(1). The trial court sentenced Martinez to 27 years in prison.

A jury found Paniagua guilty on all counts (though convicted him of second, not first, degree murder) and found true most of the gang and all of the firearm allegations. The trial court sentenced Paniagua to an aggregate prison sentence of effectively 268 years four months to life as follows: On count 1,

second degree murder, the court imposed a sentence of 30 years to life (15 years to life, doubled under the three strikes law), plus 25 years to life for the firearm enhancement under section 12022.53, subdivision (d). The court also imposed and stayed execution of 10- and 20-year terms, respectively, for the firearm enhancements under section 12022.53, subdivisions (b) and (c). For the true finding on the gang allegation, the court imposed a term of life with a minimum parole eligibility of 30 years under section 186.22, subdivision (b)(5) (a minimum parole eligibility of 15 years, doubled under the three strikes law).

On each of counts 2 through 4, attempted willful, deliberate, and premeditated murder, the court imposed a prison term of life with a minimum parole eligibility of 30 years under section 186.22, subdivision (b)(5) (a minimum parole eligibility of 15 years, doubled under the three strikes law), plus 25 years to life for the firearm enhancement under section 12022.53, subdivision (d). The court also imposed and stayed execution of 10- and 20-year terms, respectively, for the firearm enhancements under section 12022.53, subdivisions (b) and (c).

On count 5, shooting at an occupied motor vehicle on October 6, 2015 (§ 246), the court imposed and stayed execution of a prison term of three years four months,[2] plus 25 years to life under section 12022.53, subdivision (d), plus 15 years to life under section 186.22, subdivision (b)(4). On count 7, shooting at an occupied vehicle on October 13, 2015 (§ 246), the court imposed a term of three years four months, plus 20 years under section 12022.53, subdivision (c), plus 15 years to life under

---

[2]    We ultimately corrected this sentencing error in *Paniagua II*. (See *People v. Relkin* (2016) 6 Cal.App.5th 1188, 1197-1198.)

5

section 186.22, subdivision (b)(4),[3] and imposed and stayed a term of 10 years each under sections 12022.53, subdivision (b), and 12022.5, subdivision (a).  On count 9, possession of a firearm by a felon (§ 29800, subd. (a)(1)), the court imposed and stayed execution of a prison term of one year four months, plus a term of three years under section 186.22, subdivision (b)(1),[4] plus one year under section 667.5, subdivision (b).  On each of counts 1 through 4 and 7, the court imposed an additional term of five years under section 667, subdivision (a)(1).

> C.   *Paniagua Successfully Appeals Twice, and the Trial Court Resentences Him Twice*

In Paniagua's first appeal, we affirmed the judgment in most respects and directed the trial court to correct several sentencing and other errors, to exercise its discretion whether to strike the five-year enhancements under section 667, subdivision (a)(1), and to consider the effect, if any, of Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590, § 1), which limits the applicability of the one-year sentence enhancement for prior prison terms under section 667.5, subdivision (b), to defendants who have served a prison term for certain sexually violent offenses.  (*Paniagua I, supra*, B289253.)  On remand the trial court corrected the errors we identified in *Paniagua I*, declined to exercise its discretion to strike the five-year

---

[3]     In *Paniagua I* we held the trial court erred in imposing the gang penalty on count 7 because the jury found the gang allegation not true.  (*Paniagua I, supra*, B289253.)

[4]     We reversed the jury's true finding on the gang allegation related to count 9 because the trial court erred in failing to give a unanimity instruction.  (*Paniagua I, supra*, B289253.)

6

enhancements under section 667, subdivision (a)(1), and struck the one-year prior prison term enhancement under section 667.5, subdivision (b).

In his second appeal, Paniagua contended, and the People conceded, the trial court committed two additional sentencing errors on his conviction for shooting at an occupied motor vehicle (count 7). We modified the judgment to strike the firearm enhancements on count 7 and affirmed the judgment as modified. (*People v. Paniagua* (Jan. 12, 2022, B313479) [nonpub. opn.].)

Paniagua filed a petition for rehearing in *Paniagua II*, arguing that several new sentencing laws that went into effect on January 1, 2022 applied to him: (1) Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3), which (among other things) amended section 1170 to limit the trial court's discretion to impose the upper term of imprisonment and to require the court in certain circumstances to impose the lower term; (2) Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1), which amended section 654 to no longer require the trial court to impose a sentence based on the longest possible term where an act or omission is punishable in different ways by different provisions of the law; and (3) Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), which as stated amended section 1385 to add subdivision (c), to require the court to dismiss enhancements under certain circumstances. We granted the petition and concluded the new laws applied to Paniagua. We directed the trial court on count 7 to strike the enhancements under sections 12022.53, subdivisions (b) and (c),

7

and 12022.5, subdivision (a),[5] and to resentence Paniagua in accordance with the three new laws.  In holding the ameliorative legislation applied retroactively, we stated that the new laws constituted ""changed circumstances"" and that the trial court should conduct a ""full resentencing as to all counts."" (*Paniagua II*, *supra*, B313479.)  On remand the trial court resentenced Paniagua to an aggregate prison sentence of effectively 248 years four months to life.  Paniagua timely appealed.

D.    *Martinez Files a Petition for Resentencing Under Section 1172.6*

In 2022 Martinez filed a petition for resentencing under section 1172.6.[6]  Martinez asserted that, because of the Legislature's changes to the definitions of murder under sections 188 and 189, he could not currently be convicted of murder or attempted murder.  The superior court found Martinez established a prima facie case for relief, issued an order to show

---

[5]     Once the trial court vacated the gang finding and life sentence on count 7 (on remand after *Paniagua I*), the enhancements under section 12022.53, subdivisions (b) and (c), no longer applied to Paniagua.  (See § 12022.53, subd. (a).)  The enhancement under section 12022.5, subdivision (a), did not apply to Paniagua because, as we held in *Paniagua II*, the enhancement does not apply where, as here, use of a firearm is an element of the underlying offense (§ 246).  (*Paniagua II*, *supra*, B313479.)

[6]     Martinez had previously filed a request for resentencing under section 1170, subdivision (d)(1).  The trial court denied the request, and we dismissed Martinez's appeal from that order.  (*People v. Martinez* (Mar. 9, 2021, B306553) [nonpub. opn.].)

cause, and held an evidentiary hearing. After the evidentiary hearing, the court ruled Martinez was not entitled to relief and denied the petition. Martinez timely appealed.

## DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Declining To Strike Any Enhancements Under Section 1385, Subdivision (c)*

1. *Relevant Proceedings*

On August 17, 2022 the trial court conducted a(nother) resentencing hearing. The court cited the remittitur in *Paniagua II* and stated: "This will be a full resentencing of Defendant Paniagua." Referring to amended sections 654 and 1385, counsel for Paniagua argued that, because Paniagua was under the age of 26 when he committed the crimes and "suffered trauma in his background," the court should stay execution of the sentence on the count that carried the longest prison term and impose the sentence on a count that carried less prison time, strike the gang allegations, strike the prior conviction allegation, and impose concurrent sentences. The prosecutor submitted on the People's original sentencing memorandum from 2018, which listed Paniagua's prior convictions and identified six circumstances in aggravation under California Rules of Court, rule 4.421(a) and (b). The People also reported that, while Paniagua and Castillo were both in custody before the trial, Paniagua threatened and attacked Castillo.

The court found: Paniagua, a member of a criminal street gang, committed two shootings one week apart. In the first

9

shooting, the trial court stated, Paniagua "brazenly opened fire" on three people he thought were members of a rival gang, and one of the stray bullets hit a "completely innocent man inside his truck, killing him." In the second shooting, Paniagua fired shots into a car in rival gang territory, but "thankfully, on this occasion, no lives were lost." The court also discussed Paniagua's criminal history and found, under California Rules of Court, rule 4.421, four circumstances in aggravation that related to the crimes and three circumstances in aggravation that related to Paniagua.

The court acknowledged that, under amended section 654, it had discretion to stay execution of the sentence on the more serious counts, but declined to exercise that discretion because, in the court's view, it would not be in the interest of justice. Turning to amended section 1170, the court recognized that it had discretion to impose the lower term on the determinate sentences (counts 5, 7, and 9) and found that under section 1170, subdivision (b)(6), Paniagua's youth was a mitigating factor. The court concluded, however, that the aggravating factors outweighed that mitigating factor and that "selecting the lower term would not be in the interest of justice."

Finally, the court stated that the new provision in section 1385, subdivision (c), gave it discretion to dismiss enhancements, which the court said were the firearm and (on some counts) the gang enhancements. The court reviewed the mitigating circumstances enumerated in section 1385, subdivision (c)(2), and found circumstances (B) and (C) applied to all counts, circumstance (F) applied to counts 7 and 9, and

10

circumstance (E) might apply.[7]  The trial court gave the mitigating circumstances "great weight," but concluded that dismissing the enhancements would "endanger public safety" because of "the resultant shorter sentence" for Paniagua and that therefore "it would not be in the interest of justice to dismiss the enhancements."  However, on count 7, one of the convictions for shooting at an occupied vehicle, the trial court struck (following our direction in *Paniagua II*) the firearm enhancements under section 12022.53, subdivisions (b) and (c), and section 12022.5, subdivision (a).

The court resentenced Paniagua as follows:  On count 1, the court imposed a prison term of 15 years to life, doubled under the three strikes law, plus 25 years to life under section 12022.53, subdivision (d).  The court also imposed and stayed execution of 10- and 20-year terms, respectively, for the enhancements under section 12022.53, subdivisions (b) and (c), and imposed a minimum parole eligibility of 30 years under section 186.22, subdivision (b)(5).  On each of counts 2 through 4, the court sentenced Paniagua to life in prison, with a minimum parole

---

[7]  Section 1385, subdivision (c)(2), lists the mitigating circumstances: "(B) Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed.  [¶]  (C)  The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed.  [¶] . . . [¶] (E)  The current offense is connected to prior victimization or childhood trauma.  [¶]  (F)  The current offense is not a violent felony as defined in subdivision (c) of Section 667.5."  With respect to mitigating circumstance (E), the court found there was no evidence of a connection between any trauma and the current offenses.

eligibility of 30 years, plus 25 years to life under section 12022.53, subdivision (d).  The court again imposed and stayed execution of 10- and 20-year terms, respectively, for the findings under section 12022.53, subdivisions (b) and (c).  In addition, on each of counts 1 through 4, the court imposed a term of five years under section 667, subdivision (a).

On count 5, the court imposed and stayed execution of a term of five years, doubled to 10 years under the three strikes law, plus 25 years to life under section 12022.53, subdivision (d), and 15 years to life under section 186.22, subdivision (b)(4).  The court also imposed and stayed execution of 10- and 20-year terms, respectively, under section 12022.53, subdivisions (b) and (c).

On count 7, the court imposed a term of three years four months, plus five years under section 667, subdivision (a).  On count 9, the court imposed and stayed execution of a term of four years, plus three years for the gang enhancement.[8]

---

[8]     The trial court erred in imposing the gang enhancement under section 186.22, subdivision (b)(1), on count 9 because in *Paniagua I* we reversed the true finding on the gang allegation.  We will modify the judgment to correct this error.  (See *People v. Harbison* (2014) 230 Cal.App.4th 975, 986 ["'When sentencing error does not require additional evidence, further fact finding, or further exercise of discretion, the appellate court may modify the judgment appropriately and affirm it as modified.'"].)

## 2. *Applicable Law and Standard of Review*

Section 1385, subdivision (c), provides:  "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so."  Section 1385, subdivision (c), "further provides that '[i]n exercising its discretion under this subdivision,' the trial court 'shall consider and afford great weight' to certain 'mitigating circumstances,' if proven by the defendant.  [Citation.]  'Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.'" (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 290 (*Mendoza*); see *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 16-17; *People v. Sek* (2022) 74 Cal.App.5th 657, 674 (*Sek*).)[9]  ""'Endanger public safety" means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.'" (*Mendoza*, at p. 295; see § 1385, subd. (c)(2); *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1094, review granted Apr. 12, 2023, S278894.)

"[A]buse of discretion is the proper standard of review for the trial court's determination that dismissal of [a defendant's] firearm enhancement would endanger public safety" under section 1385, subdivision (c).  (*Mendoza*, *supra*, 88 Cal.App.5th at p. 298; see *People v. Walker* (2022) 86 Cal.App.5th 386, 395,

---

[9]    "The mitigating circumstances originally were listed under subdivision (c)(3) of section 1385.  [Citation.]  Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended the statute to list them under section 1385(c)(2)." (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 291, fn. 1; see Stats. 2022, ch. 58, § 15; Stats. 2021, ch. 721, § 1.)

review granted Mar. 22, 2023, S278309; see also *People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*) ["a trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385[, subdivision (a),] is subject to review for abuse of discretion"].) "The abuse of discretion standard is highly deferential. When, "'as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'"'" (*Mendoza*, at p. 298; see *Carmony*, at p. 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"]; *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490 [same].)

### 3. *The Court Did Not Abuse Its Discretion in Declining To Dismiss the Enhancements Under Section 1385, Subdivision (c)*

Paniagua argues the trial court abused its discretion because it "refused to dismiss even a single enhancement on the ground that doing so would endanger public safety." Paniagua, however, did not make this argument in the trial court. He did not dispute that striking the enhancements would result in physical danger or injury to others, nor did he challenge the trial court's finding at the August 17, 2022 resentencing hearing that it would. Therefore, he forfeited the argument. (See *People v. Scott* (1994) 9 Cal.4th 331, 353 [a party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"

14

if the party did not object to the sentence at trial]; *People v. Anderson* (2023) 88 Cal.App.5th 233, 242 [defendant forfeited his challenge to the trial court's decision to impose the upper term because he failed to object when the court imposed it], review granted Apr. 19, 2023, S278786].)

In any event, the trial court did not abuse its discretion. The court reviewed the evidence and found two mitigating circumstances applied (the People alleged multiple enhancements; applying the enhancements would result in a sentence of over 20 years) to all the counts and a third mitigating circumstance (the current offense was not a violent felony, as defined in section 667.5, subdivision (c)) applied to counts 7 and 9. However, the court also considered the circumstances of the crime, which included that Paniagua "brazenly" fired a gun on a public street resulting in the death of an innocent man; that Paniagua committed two shootings one week apart; and Paniagua's increasing criminality. The court concluded it was a "virtual certainty" a shorter sentence would endanger the public. This was not an irrational or arbitrary conclusion, particularly given Paniagua expressed no remorse at the original sentencing hearing and intimidated a witness before trial. (See *Mendoza*, *supra*, 88 Cal.App.5th at p. 299 [trial court did not abuse its discretion in declining to dismiss an enhancement, where the court considered the circumstances of the crime and concluded "a long sentence was necessary for [the defendant] to become rehabilitated after committing such a crime"].)

Paniagua argues that, given the length of his sentence (effectively 248 years four months), the court's finding "that dismissing any enhancements would endanger public safety . . . could not possibly be correct." Paniagua does not dispute the

15

court's finding he poses a public safety risk if released; instead, he essentially argues it doesn't matter how dangerous he is because, given his two-and-a-half century prison sentence, he may never be released. According to Paniagua, even if the court dismissed "150 years' worth of enhancements," he "would still be serving" life without the possibility of parole.

That is not the law. Paniagua cites no authority for the proposition the length of a defendant's prison sentence is a factor in determining under section 1385, subdivision (c), whether dismissing the enhancement would endanger public safety. Under his theory, a defendant is entitled to dismissal of all enhancements, regardless of the defendant's dangerousness, as long as the resulting sentence exceeds the defendant's life expectancy. Moreover, as Paniagua's three (so far) appeals demonstrate, his sentence has not remained static—the trial court made some sentencing errors that, when corrected, resulted in a shorter aggregate sentence, and the Legislature enacted (and continues to enact) ameliorative legislation. The trial court reasonably concluded decreasing Paniagua's sentence by any amount would contribute to the risk of serious danger to others. (Cf. *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129 ["staying rather than striking the prohibited firearm enhancements serves the legislative goals of section 12022.53 by making the prohibited enhancements *readily* available should the section 12022.53 enhancement with the longest term be found invalid on appeal"].) Paniagua has not shown the trial court was unaware of its discretion to dismiss an enhancement, considered an impermissible factor, or failed to consider a required factor. (See *Mendoza, supra*, 88 Cal.App.5th at p. 299 [section 1385, subdivision (c), "does not require the trial court to consider any

16

particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others'"]; see also *Carmony*, *supra*, 33 Cal.4th at p. 378 ["an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss"]; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1141 ["an abuse of discretion may be found where a trial court considers impermissible factors, and, conversely, does not consider relevant ones"].)

Paniagua also contends that the court's refusal to dismiss any enhancements "was inconsistent with the spirit and letter" of section 1385, subdivision (c). By failing to support this contention with any argument or citation to authority, however, Paniagua forfeited it too. (See *People v. Ramirez* (2022) 13 Cal.5th 997, 1124, fn. 39; *People v. Stanley* (1995) 10 Cal.4th 764, 793.) In any event, the text of section 1385, subdivision (c), preserves the court's discretion to dismiss an enhancement if doing so would endanger public safety, which the court found applied to Paniagua. (See *People v. Anderson, supra*, 88 Cal.App.5th at p. 239 [section 1385, subdivision (c), "explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal"], review granted; *People v. Walker, supra*, 86 Cal.App.5th at p. 395 ["Section 1385 makes clear that whether dismissal of an enhancement is 'in the furtherance of justice' is a 'discretion[ary]' call for the trial court to make."], review granted.)

17

### 4. *Section 1385, Subdivision (c)(3), Does Not Apply to Alternate Sentencing Provisions*

At the August 17, 2022 resentencing hearing, the trial court considered whether it should exercise its discretion to strike the firearm and gang enhancements; the court did not mention or apparently consider the effect on Paniagua's sentence of his prior serious or violent felony conviction under the three strikes law. Paniagua asks us now to direct the trial court to apply section 1385, subdivision (c), to alternative penalty schemes, like the three strikes law, and to exercise its discretion whether to "dismiss those penalty provisions." Section 1385, subdivision (c), however, does not apply to alternate penalty provisions like the three strikes law.

""""[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citation.] In determining that intent, we first examine the words of the respective statutes: "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist.""""" (*People v. Burke* (2023) 89 Cal.App.5th 237, 242 (*Burke*); see *People v. Lipscomb*, *supra*, 87 Cal.App.5th at p. 17.)

"The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement. We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Burke*, *supra*, 89 Cal.App.5th at p. 244; see *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2 (*Tilley*) [because a "prior strike conviction is not an enhancement

but part of an alternative sentencing scheme," section 1385, subdivision (c), "does not apply to prior strike convictions"].)  We agree with *Burke* and *Tilley*:  The statutory language of section 1385, subdivision (c), is clear and unambiguous.  Section 1385, subdivision (c), refers to an enhancement, which "has a well-established technical meaning in California law" and does not include an alternate sentencing scheme like the three strikes law.  (*Burke*, at p. 243 & fn. 3; see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 527 ["The Three Strikes law . . . articulates an alternative sentencing scheme for the current offense rather than an enhancement."]; *People v. Frutoz* (2017) 8 Cal.App.5th 171, 174, fn. 3 [same]; see also *Association of Deputy District Attorneys for Los Angeles County v. Gascon* (2022) 79 Cal.App.5th 503, 542 ["the Legislature (and the voters) enacted the three strikes law to create an alternative sentencing scheme when the defendant has qualifying prior felony convictions"], review granted Aug. 31, 2022, S275478.)

Citing *Arden Carmichael, Inc. v. County of Sacramento* (2000) 79 Cal.App.4th 1070, Paniagua argues section 1385, subdivision (c), contains a "'latent ambiguity'" that "courts must resolve to read the law consistent with the Legislature's true intention."  Although the court in *Arden Carmichael* concluded there was no latent ambiguity in a constitutional provision adopted by voter initiative, the court described a "latent ambiguity" as one that may exist "'"where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic evidence creates a necessity for interpretation or a choice among two or more possible meanings."'"  (*Arden Carmichael*, at p. 1075.)  The court in that case cautioned, however, that "the will of the people as expressed in the plain

19

meaning of the constitutional provision is paramount," that the court's duty was "not to twist words to substitute [its] own judgment for that of the voters" but "to determine and apply the intent of the people," and that with "extremely rare exceptions . . . that intent will be found in the plain meaning of the constitutional provision." (*Id*. at p. 1076.) As more recent case authority makes clear, "although extrinsic evidence may reveal a latent ambiguity in a statute, such ambiguity must reside in the statutory language itself. It cannot exist in the abstract, or by ignoring the statutory language." (*Siskiyou County Farm Bureau v. Department of Fish & Wildlife* (2015) 237 Cal.App.4th 411, 420.) As discussed, the statutory language of section 1385, subdivision (c), does not reflect any ambiguity.

B. *Paniagua Forfeited His Request To Apply Assembly Bill No. 333 to His Sentence and Has Not Demonstrated Ineffective Assistance of Appellate Counsel*

1. *Applicable Law*

"Assembly Bill 333 made the following changes to the law on gang enhancements: First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' [Citation.] Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. [Citation.] Third, Assembly Bill 333 also narrowed the

20

definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. [Citation.] Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.'" (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*); see *Sek*, *supra*, 74 Cal.App.5th at p. 665.) Paniagua contends, the People concede, and we agree these ameliorative changes in the law are retroactive. (See *Tran*, *supra*, 13 Cal.5th at pp. 1206-1207; *People v. Salgado* (2022) 82 Cal.App.5th 376, 380; *Sek*, at p. 667.)[10]

### 2. *Paniagua Forfeited His Argument Based on Assembly Bill No. 333*

Paniagua argues the "true findings on the gang allegations must be vacated based on changes to the law made by [Assembly

---

[10] Assembly Bill No. 333 also added section 1109, "which requires, if requested by the defendant, a gang enhancement charge to be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime." (*Tran*, *supra*, 13 Cal.5th at p. 1206.) Whether section 1109 applies retroactively "is the subject of a split of authority among the Courts of Appeal," which the Supreme Court has declined to

21

Bill No.] 333." Paniagua, however, did not argue at the August 17, 2022 resentencing hearing the changes in the law governing gang enhancements in Assembly Bill No. 333, which became effective January 1, 2022, applied to him, nor did he ask the court to dismiss the gang enhancements under Assembly Bill No. 333. Therefore, he has forfeited the argument. (See *People v. Scott*, *supra*, 9 Cal.4th at p. 351 ["In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim."]; *People v. Anderson*, *supra*, 88 Cal.App.5th at p. 242 [defendant forfeited his argument the trial court relied on improper factors in imposing the upper term], review granted; *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100 ["Appellant forfeited his sentencing claims because he did not object at the time of sentencing."].)

Paniagua argues he did not forfeit his argument because, "when *Paniagua II* was decided, the law was unsettled as to whether someone like him, whose convictions had been upheld on initial review and who was only appealing from his resentencing, could take advantage of changes to the definition of an enhancement the jury found true at his trial." Even assuming Paniagua's characterization of the law in February 2022 (when we filed our modified opinion in *Paniagua II* after granting Paniagua's petition for rehearing) is correct, by the time the resentencing hearing occurred on August 17, 2022, the Supreme

resolve. (*Tran*, at p. 1208.) Paniagua states he "is not asserting he was prejudiced by the lack of a bifurcated trial."

22

Court had decided *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*) (almost three months before the sentencing hearing), which, as Paniagua points out, held an ameliorative voter initiative (Proposition 57) applied to the defendant at his third resentencing hearing.[11] (*Padilla*, at pp. 158-159; see *Sek*, *supra*, 74 Cal.App.5th at pp. 665-667 [Assembly Bill No. 333, enacted while the defendant's appeal from his resentencing was pending, applied retroactively.].) Paniagua's failure to argue at his resentencing hearing that Assembly Bill No. 333 applied to him precludes him from raising the argument in this appeal. (*People v. Scott*, *supra*, 9 Cal.4th at p. 351; *People v. Sperling*, *supra*, 12 Cal.App.5th at p. 1100.)

In his reply brief, Paniagua asserts it was "not clear" his trial counsel could have challenged the gang findings because this court's disposition in *Paniagua II* "was limited to resentencing based on certain new laws specified in the order and did not encompass a challenge to the sufficiency of the evidence for the gang enhancements." Our disposition, however, did not preclude Paniagua from asking for relief under Assembly Bill No. 333. In *Paniagua II* we agreed with Paniagua the 2022 amendments to sections 654, 1170, and 1385 applied to him and, citing *People v. Buycks* (2018) 5 Cal.5th 857, 893, concluded the "changed circumstances" made a "full resentencing as to all counts . . . appropriate." (*Paniagua II*, *supra*, B313479, internal quotation marks omitted.) In the disposition, among other things we vacated Paniagua's sentence, which authorized the trial court

---

[11] Proposition 57 provides that a minor may be tried and sentenced in criminal courts only after a juvenile court judge conducts a transfer hearing. (*Padilla*, *supra*, 13 Cal.5th at p. 159.)

to conduct a full resentencing (see *Buycks*, at p. 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate'"]; *People v. Butler* (2023) 89 Cal.App.5th 953, 962 [because the court vacated the defendant's sentences on one of the counts, he was "entitled to a full resentencing"], review granted May 31, 2023, S279633), which is what the trial court stated it was doing. The full resentencing rule allowed the trial court to revisit the gang findings and hear Paniagua's argument about Assembly Bill No. 333. (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"].)

Nor is there merit to the argument in Paniagua's reply brief that *People v. Lopez* (2023) 93 Cal.App.5th 1110 cast doubt on "whether the trial court had the authority to grant relief" in this case. In *Lopez* the court held that, while the defendant on resentencing "was fully entitled to the ameliorative benefits of Assembly Bill 333," the trial court on remand "had no jurisdiction to readjudicate the gang enhancements." (*Id.* at pp. 1119, 1120.) *Lopez*, however, was not decided until July 2023, almost a year after the resentencing hearing in this case.

Paniagua also contends that "the use of pre-[Assembly Bill No.] 333 instructions provides a separate basis for reversal." This contention is essentially a different way of saying the trial court should have required the People to retry the gang allegation under the amended version of section 186.22. As discussed, however, Paniagua did not argue at his resentencing hearing Assembly Bill No. 333 applied to him, thus forfeiting the issue. *Tran*, *supra*, 13 Cal.5th 1169 and *People v. Delgado* (2022) 74 Cal.App.5th 1067, cases Paniagua cites to support his

24

contention, were in a different procedural posture than this case. The Legislature enacted Assembly Bill No. 333 while the appeals in those cases were pending, and the defendants argued the new legislation applied to them. That is not what happened here. The Legislature enacted the ameliorative legislation while *Paniagua II* was pending, and Paniagua had an opportunity to challenge the gang findings at that time or at any time up to and including his resentencing hearing in August 2022.

> 3. *Paniagua Has Not Demonstrated His Appellate Counsel (in* Paniagua II*) Was Ineffective*

Paniagua argues that, if he forfeited his argument under Assembly Bill No. 333, his appellate counsel in *Paniagua II* was ineffective for not raising the issue (along with Senate Bill No. 567, Assembly Bill No. 518, and Senate Bill No. 810) in the petition for rehearing. Paniagua, however, has not demonstrated his appellate counsel's performance prejudiced him.

"To demonstrate ineffective assistance of counsel, [the defendant] 'must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.'" (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165; see *Tilley*, *supra*, 92 Cal.App.5th at p. 778; *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 994-995.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009; accord, *People v. Brand* (2021) 59 Cal.App.5th 861, 872.) To show prejudice, the defendant must demonstrate a "'reasonable

25

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 676; see *Tilley*, at p. 778.) "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" (*Tilley*, at p. 778; see *Strickland v. Washington* (1984) 466 U.S. 668, 697.)

Paniagua did not address the issue of prejudice in his opening brief. Therefore, he forfeited the argument his appellate counsel was ineffective. (See *People v. Clark* (2016) 63 Cal.4th 522, 552; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 408.)

In his reply brief Paniagua seems to make the (forfeited) suggestion that the failure by his appellate counsel in *Paniagua II* to request relief under Assembly Bill No. 333 precluded his trial counsel from raising the issue at the (second) resentencing hearing in August 2022. It did not. As discussed, our opinion in *Paniagua II* authorized the trial court to conduct a full resentencing, which included revisiting the enhancements and penalties based on the gang findings. Appellate counsel's failure to discuss Assembly Bill No. 333 did not preclude trial counsel on remand from challenging the gang findings under the new law at the resentencing hearing. Thus, Paniagua has not

demonstrated "a reasonable probability of a *different* result but for counsel's errors." (*Tilley*, *supra*, 92 Cal.App.5th at p. 778.)[12]

C.     *The Order Denying Martinez's Petition for Resentencing Must Be Reversed Because the Superior Court Did Not Apply the Correct Standard of Proof*

Martinez contends that, at the evidentiary hearing on his petition for resentencing under section 1172.6, the superior court "applied an incorrect standard of proof" and failed to act as an independent fact finder. The record supports both contentions. Therefore, we reverse the superior court's order denying his petition and direct the court to conduct a new evidentiary hearing under the proper standard.

1.     *Relevant Proceedings*

After Martinez filed his petition under section 1172.6, the superior court issued an order to show cause and set the matter for an evidentiary hearing. The prosecutor filed a response that summarized the evidence presented at the preliminary hearing and that argued, in light of Martinez's role as a driver and facilitator of the shooting, he still could be convicted as a direct aider and abettor under current law. At the hearing, counsel for

---

[12]     Paniagua does not argue his trial counsel was ineffective. In fact, he seems to argue the opposite; namely, his trial counsel "may have reasonably believed" she could not have raised the issue under Assembly Bill No. 333 because of the disposition in *Paniagua II* and the purportedly unsettled state of the law at the time of the resentencing hearing.

Martinez argued there was insufficient evidence to find Martinez was not eligible for relief under section 1172.6.

The superior court stated it was limiting the evidence it would consider to the evidence presented at Martinez's preliminary hearing, explaining it would be improper to consider any evidence from Paniagua's trial or the appellate opinions in this case. The court also stated the applicable standard of proof: "It is the People's burden here to establish beyond a reasonable doubt that Mr. Martinez could be convicted of the crime of which . . . he pled in this case beyond a reasonable doubt." The court found the following facts were "particularly salient as to [Martinez's] intent": Martinez and Paniagua, both members of the same gang, were in the territory of a rival gang; Martinez was driving the car when Paniagua "hit up" Castillo; and after that encounter, "while Martinez was doing the driving," Martinez pulled his car up "right behind" another car, "which appeared to be an intentional means by which to facilitate Mr. Paniagua having this second confrontation." The court found that Paniagua wore a hat representing his gang into a rival gang's territory, where "confrontation is either likely to happen or you are going to initiate it happening" and that Martinez did "the driving for Mr. Paniagua to commit multiple intentional acts of violence against the rival gang." The court found that, even if Martinez had been surprised by Paniagua confronting Castillo, "there was no way he could have been surprised" by the second encounter that resulted in the shooting.

The court stated: "Mr. Martinez facilitated it, and he aided and abetted it by providing the access. The driving. Getting Mr. Paniagua to the location where these crimes happened." The court found the evidence showed "beyond a reasonable doubt"

that "it was more than possible" Martinez's actions "would result in the conviction of at least voluntary manslaughter, but more likely a murder under the current law." The court stated: "I'm not saying that he would be, but he certainly could be." The court concluded by ruling: "Direct aiding and abetting is still a legally viable and appropriate theory of liability. And I do believe that Mr. Martinez would still be convicted under that theory were this case to go to trial against him."

2. *Applicable Law and Standard of Review*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e). The latter provision requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); that the defendant, though not the actual killer, with the intent to kill assisted in the commission of the murder (§ 189, subd. (e)(2)); or that the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2,"

29

the felony-murder special-circumstance provision. (§ 189, subd. (e)(3); see *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Strong*, at p. 708; *Gentile*, at pp. 842-843; *People v. Cody* (2023) 92 Cal.App.5th 87, 105.)

Section 1172.6 creates "a procedural mechanism for those convicted of murder under prior law to seek retroactive relief." (*People v. Wilson*, *supra*, 14 Cal.5th at p. 869.) The statute authorizes an individual convicted of felony murder or murder, attempted murder, or voluntary manslaughter based on a natural and probable consequences doctrine "or any other theory under which malice is imputed to a person based solely on that person's participation in a crime" to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder, attempted murder, or manslaughter because of the changes the Legislature made to the definitions of the crime of murder. (See *Strong*, *supra*, 13 Cal.5th at p. 798; *Lewis*, *supra*, 11 Cal.5th at p. 957; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.)

Where the petitioner makes the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1)); see *Strong, supra*, 13 Cal.5th at pp. 708-709.) At the hearing to determine whether the petitioner is entitled to relief, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3); see

*People v. Vance* (2023) 94 Cal.App.5th 706, 715; *People v. Burgess* (2023) 88 Cal.App.5th 592, 601-602.)

The 2022 amendments to section 1172.6 "clarified that the [superior] court's role in a section 1172.6 proceeding is to act as an independent fact finder and determine, in the first instance, whether the petitioner committed murder" under amended sections 188 and 189. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 123; accord, *People v. Clements* (2022) 75 Cal.App.5th 276, 294; *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) The court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony. (§ 1172.6, subd. (d)(3); see *People v. Burgess*, *supra*, 88 Cal.App.5th at p. 600.) The petitioner and the prosecutor may also offer new or additional evidence. (§ 1172.6, subd. (d)(3); see *People v. Gentile, supra*, 10 Cal.5th at pp. 853-854.)

"If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3); see *People v. Wilson*, *supra*, 14 Cal.5th at p. 869; *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1112-1113.) We review de novo whether the superior court applied the proper standard of proof at the evidentiary hearing. (See *People v. Clements*, *supra*, 75 Cal.App.5th at p. 293.)

31

### 3. *The Superior Court Did Not Comply with Section 1172.6, Subdivision (d)(3)*

The superior court did not apply the correct standard of proof at the evidentiary hearing under section 1172.6, subdivision (d)(3). Although the court initially stated the correct standard[13]—beyond a reasonable doubt—the remainder of the court's comments reflect that the court did not apply that standard. For example, after stating Martinez facilitated the shooting, the court concluded it was "more than possible" that Martinez's actions would result in a conviction of voluntary manslaughter or murder. More than possible is not beyond a reasonable doubt; it's not even by a preponderance of the evidence. Section 1172.6, subdivision (d)(3), requires the court to find, beyond a reasonable doubt, a petitioner is guilty of murder, not possibly guilty of murder, or, as the court also stated, "likely" guilty of murder. (See *People v. Clements*, *supra*, 75 Cal.App.5th at p. 296 [Once "'a prima facie case of eligibility has been made and an order to show cause issued, the prosecution's burden is neither conditional nor hypothetical. Under subdivision (d)(3) the prosecutor must prove "the petitioner is ineligible for resentencing," not that he or she might be or could be ineligible.'"].) The court's comment it was not concluding Martinez would be convicted of murder, only that he could be, is consistent with applying the wrong standard of proof.

The record also shows the superior court did not make a ruling as an independent fact finder. Although the court stated

---

[13] More or less. The court's description of the standard, that the People had the burden to prove beyond a reasonable doubt Martinez could be convicted of the crime to which he pleaded no

32

Martinez would be convicted (in addition to stating he could be convicted) as a direct aider and abettor, the court made this statement in the context of what would happen at a trial before a jury, not what the court was actually finding as a trier of fact. Indeed, the court never suggested it understood its role was to act as an independent fact finder. (Cf. *People v. Burgess, supra*, 88 Cal.App.5th at p. 602 ["the trial court applied the correct standard of proof, made extensive factual findings relevant to whether defendant committed murder under current law, and made a legal conclusion defendant did commit murder under current law"].)

The People argue the court's comments "as a whole" demonstrated the court "acted as an independent fact finder as required by section 1172.6, subdivision (d)(3)." The portions of the record the People cite, however, show the opposite. For example, the People point to the court's statements that direct aiding and abetting remained a viable legal theory of liability and that, in the court's view, Martinez "'would still be convicted under that theory were this case to go to trial against him.'" This statement, however, was not a finding that Martinez is guilty of murder; as discussed, it was a finding that a different fact finder (i.e., a jury) could or would find Martinez guilty. (Cf. *People v. Cody, supra*, 92 Cal.App.5th at p. 110 ["Although at one point the trial court alluded to what a 'reasonable and rational jury' would

---

contest, was inaccurate. Martinez pleaded to and was convicted of manslaughter; the issue was whether he was guilty of murder under current law. (See § 1172.6, subd. (d)(3).) And, contrary to the court's use of the phrase "could be convicted," section 1172.6, subdivision (d)(3), requires the superior court to find the petitioner "is guilty" of murder. (See *People v. Guiffreda, supra* 87 Cal.App.5th at p. 123.)

do, the court immediately corrected itself by saying, 'of course I'm not saying what they would do.  I'm the independent fact finder here, so let's be clear.'"].)

## DISPOSITION

Paniagua's judgment is modified to strike the gang enhancement on count 9.  As modified, the judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment and send it to the Department of Corrections and Rehabilitation.  The order denying Martinez's petition under section 1172.6 is reversed, and the superior court is directed to conduct a new evidentiary hearing and apply the correct standard of proof under section 1172.6, subdivision (d)(3).

                                          SEGAL, Acting P. J.

We concur:


                    FEUER, J.



                    MARTINEZ, J.